**Adrian Albert TOY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

Nos. C14–92–00621–CR, C14–92–00622–CR and C14–92–00623–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 20, 1993.

154

Nancy Boler, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

BOWERS, Justice.

Appellant entered a plea of not guilty before the jury to three offenses of aggravated robbery. He was convicted and the jury assessed punishment, enhanced under TEX.PENAL CODE ANN. § 12.42(d), at imprisonment for 25 years, 25 years and 35 years.

Appellant brings forth ten points of error. Appellant argues the trial court erred in denying appellant's *Batson* challenge and in failing to grant a mistrial after a Houston police officer told a juror, "remember the word of the day is guilty." Appellant also argues the evidence is insufficient to support the convictions; the evi-

dence is insufficient to support the jury finding of use of a deadly weapon; and the evidence is insufficient to support the jury finding of use of a firearm. We affirm.

On August 20, 1990, Victoria Hrutkay and a co-worker were walking to lunch when a car pulled up beside them and stopped. The passenger of the car, later identified as appellant, opened the door and ordered Hrutkay to give him her purse. Appellant pulled out a gun. Hrutkay threw her purse onto the trunk of the car. Immediately thereafter, another vehicle pulled up behind appellant's car. Appellant jumped back into the passenger seat of the car and the driver sped away. Hrutkay retrieved her purse before appellant got away.

On the same day, around noon, Lois Jones was buckling her two grandchildren into the front seat of her car. Jones felt something pull at her purse, which was hanging on her arm. She turned and saw appellant. Appellant told Jones to give him her purse or he would shoot her. Jones held out her arm and appellant took her purse. Appellant then returned to his car where another man was waiting.

About 8:00 that same evening, Jose Gallardo, Juan Baez and Evan Ortega were installing a car stereo into a car at the parking lot of their apartment complex. A car, driven by appellant, pulled up beside the three men. The passenger in the car asked the three men if they knew where Jose Martinez lived. The men said "no." The passenger, later identified as Johnny Harris, got out of the vehicle and pointed a gun at the three men. Harris put the gun into Gallardo's stomach and told the men to give Harris everything they had. Harris took Baez's wallet and the radio from the car.

At 8:20 p.m., Houston police officer D.P. Small, received a dispatch regarding the robbery of Gallardo, Baez and Ortega. Officer Small met with the men and after talking with them the officer aired a description of the suspects and their vehicle. Within a few minutes, Officer Small was notified that other police officers had stopped the car. Officer Small picked up the suspects and took them back to the apartment complex. The three men identified the suspects as the robbers.

The next day, Hrutkay, Jones, Baez and Gallardo were called to view a police line-up. All of the victims separately identified appellant as one of the persons who robbed them.

In his first, second and third points of error, appellant argues the trial court erred by permitting the State to exclude venire-member Gloria Hanna from the jury. Appellant argues the State's use of a peremptory challenge to exclude Hanna from the jury was in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and TEX.CODE CRIM.PROC. ANN. art. 35.261.

Appellant is a black man. Five black individuals were on the venire. The defense struck one black person for cause. The State used a peremptory challenge to exclude Gloria Hanna. Two of the black prospective jurors were never reached. The remaining black veniremember was empaneled as a juror.

After both the State and the defense made their jury strikes, but before the jury was sworn, appellant objected to the State's use of a peremptory challenge to exclude Hanna complaining the State had struck a black juror without a racially neutral reason. After conducting a hearing to determine the State's reasons for exercising a peremptory challenge against Hanna, the court denied appellant's *Batson* challenge.

To establish a prima facie case of purposeful discrimination in selecting the jury, appellant must show he is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove venire members of appellant's race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722. Once appellant makes a prima facie showing of purposeful discrimination, the burden shifts to the State to come forward with neutral explanations for challenging black jurors. *Id.* at 97, 106 S.Ct. at 1723. The prosecutor must give "clear and reasonably specific" explanations of "legiti-

mate reasons" for striking a juror. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Crim. App.1989) (citing *Batson*). The following colloquy occurred during the *Batson* hearing:

> DEFENSE: ... let me establish that [Hannah] was one of the panelists who was asked questions by [the State] on a number of things. She said she had trouble with aggravated robberies, meaning that she was—I interpreted that to mean there might be some problem whether she might be fair, and you know, against the defendant who's accused of being an aggravated robber. So I see no reason why she should have struck unless it was for some racially motivated reason.
>
> COURT: Go ahead and give me—
>
> STATE: Judge, Ms. Hanna, during voir dire by the defense counsel, stopped him—I believe he asked did anybody have any questions or something to that effect. And she raised her hand and she—it concerned me because she started talking about reasonable doubt and she said, well, [the prosecutor] here today, [said] so and so, so and so. And [defense counsel] told us so and so, so and so. And I'm confused or something to that effect. And that was my concern. Certainly I have the burden of proof. And I want to make sure that I have a juror that understands what beyond a reasonable doubt means or feels like. And it was apparent from [Hanna's] questioning that she at least had some confusion about—
>
> COURT: Anything else?
>
> STATE: That's all, Your Honor.
>
> COURT: I find it's a racially neutral reason for striking the juror and overrule the motion.

■ This court must determine if the State's reason for striking Hanna is legitimate. Factors we must consider include:

1. the reason given for the peremptory challenge is not related to the facts of the case;

2. there was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. persons with the same or similar characteristics as the challenged juror were not struck;

4. the challenged juror was questioned so as to evoke a certain response without asking the same question of other panel members; and

5. the State's explanation is based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 713–714. If any of these factors exist, the strike may have been based upon an impermissible pretext. Although appellant admits the prosecutor's explanation is plausible, he contends the explanation is not valid because the racially neutral reason the prosecutor offered to explain the strike is not related to the facts of these cases.

Appellant contends that during voir dire, Hannah asked the State about the meaning of the term "aggravated." After the State explained "aggravated," Hanna indicated she understood the explanation. Appellant argues because Hanna indicated she understood the meaning of "aggravated" there is nothing in the record to support the reason the State gave for the strike.

■ There is nothing in the State's explanation to indicate the State was concerned about Hanna's ability to understand the meaning of the term "aggravated." The State believed Hanna was confused and did not understand the legal issue of "beyond a reasonable doubt." Although Hanna did not say specifically she would hold the State to a higher burden of proof, her confusion on the issue made it impossible for the State to be certain she would not do so. A juror's ability to follow the instructions of the court, apply the law and hold the State to the proper burden of proof is directly related to the facts of any case. The above exchange indicates the State struck Hanna after she expressed difficulty with applying the burden of proof, beyond a reasonable doubt. The State clearly produced race-neutral reasons for striking Hanna.

■ If the prosecutor sustains the burden of producing race-neutral explanations, the burden shifts back to appellant to rebut the prosecutor's explanations or to show that the explanations were merely a pretext. *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). After the prosecutor stated the reason for striking Hanna, appellant's counsel did not ask the prosecutor any questions, nor did appellant's counsel rebut the State's explanation or show that the prosecutor's explanation was a pretext.

■ This court can reverse the trial court only if the trial court's findings of fact are "clearly erroneous" in light of the entire record. *Williams*, 804 S.W.2d at 101. Appellant has the burden to persuade the trial court by a preponderance of the evidence that the allegations of purposeful discrimination are true. *Tennard v. State*, 802 S.W.2d 678, 681 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). Appellant failed to meet this burden. We overrule appellant's first, second and third points of error.

In his fourth and fifth points of error, appellant argues the evidence is insufficient to support a jury finding that appellant used a deadly weapon during the robberies of Victoria Hrutkay and Jose Gallardo. In his sixth and seventh points of error, appellant argues the evidence is insufficient to support a jury finding that appellant used a firearm during these same two robberies.

■ In reviewing the sufficiency of the evidence, the appellate court must view the evidence in the light most favorable to the verdict, and must determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801 (Tex.Crim.App.1984). The standard of review is the same regardless of whether the case involves direct or circumstantial evidence. *Id.* at 803.

Except for the names of the victims, the indictments in the two cases alleging that a deadly weapon was used are identical:

while in the course of committing theft of property owned by [victim's name] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [victim's name] in fear of imminent bodily injury and death by using and exhibit a deadly weapon, to-wit: a nailgun.

The indictments do not allege that the deadly weapon used by appellant was a firearm. The jury charges in both cases are also identical, with the exception of the victim's names. The jury charges define both "deadly weapon" and "firearm." The charges also instruct the jury to find appellant guilty as charged in the indictments if the jury found appellant used or exhibited a deadly weapon, to wit: a firearm *or* used or exhibited a deadly weapon, to wit: a nailgun.

■ If the State had alleged in the indictment that the deadly weapon used was a "firearm," the State would have been required to prove use of a firearm beyond a reasonable doubt. *Benavides v. State*, 763 S.W.2d 587 (Tex.App.—Corpus Christi 1988, pet. ref'd). The State, however, is not required to allege use of a firearm to charge appellant with the offense of aggravated robbery. *Gomez v. State*, 685 S.W.2d 333 (Tex.Crim.App.1985).

A person commits aggravated robbery if in the course of committing robbery, he, *inter alia:* causes serious bodily injury to another; uses or exhibits a deadly weapon; or causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, ... TEX.PENAL CODE ANN. § 29.03(a)(1)(2)(3). The jury returned verdicts as "guilty, as charged in the indictment." The record does not indicate the jury found the deadly weapon, the nailgun, to be a firearm.

Officer C.E. Anderson, a Houston Police Department firearms examiner, testified the weapon used by appellant was a nailgun or a stud gun and the gun is used to fire a nail into cement or metal. Officer Anderson explained to the jury how this particular nailgun worked:

There's a blank cartridge that is manufactured for this particular type of gun. And it's manufactured so as to—you can place the nail in the barrel, and this nail is driven into whatever you are trying to drive it into by the pulling of the trigger. And this *gun ignites the cartridge by striking the primer and then igniting the primer and then causing the build up of gases which drives the nail out of the end of the barrel at a tremendous volume of force.*

(Emphasis added.) A "firearm" is defined as "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." Tex.Penal Code Ann. § 46.01(3).

■ Appellant claims Officer Anderson's testimony is inadequate to support the findings of use of a deadly weapon and use of a firearm because on cross-examination the officer testified the nailgun was inoperable at the time of trial and the gun was not in a condition to be used as a weapon. A firearm need not be serviceable to be classified as a deadly weapon. *Aikens v. State,* 790 S.W.2d 66 (Tex. App.—Houston [14th Dist.] 1990, no pet.).

Relying on definitions from *Black's Law Dictionary* to define "firearm," appellant asserts the nailgun was not a firearm because while a nail may have been propelled out of the device by the action of gunpowder exploded within it, a nail is not a shell or bullet and the nailgun is not a weapon that acts by force of gunpowder.

Victoria Hrutkay, one of the victims testified appellant "reached down to the floor of the car and pulled up what looked to me to be some kind of gun. Not a handgun, but obviously some kind of gun." The victim also testified she felt threatened or in fear of imminent bodily injury or death and appellant pointed a gun at her.

The other victim, Jose Gallardo, testified appellant was driving the car that approached Gallardo and his two friends. The passenger in the car got out of the car and "pulled out the gun." Gallardo also testified the passenger pointed the gun at Gallardo and put the gun in Gallardo's stomach. Gallardo testified he felt threatened or in fear of imminent bodily injury or death. Gallardo further testified the gun "was like a machine gun." Gallardo testified appellant "was pointing with something at us," and Gallardo was not sure if it was a shotgun or something else.

■ The jury is able to make a reasonable inference from the testimony that a gun was used in the commission of a crime, and the gun was a firearm. *Benavides,* 763 S.W.2d at 589. Appellant's threatening the victims with the gun in itself suggests that the gun is a firearm rather than merely a gun of the non-lethal variety. *Id.*

Appellant also argues the nailgun is a tool or hand instrument used in facilitating mechanical operations, as a hammer, and a "weapon" is any device or instrument used in fighting. Appellant argues the nailgun was designed to be used in construction, whereas "arm" means to equip with weapons. Appellant further argues the nailgun was not designed, made, or adapted to cause death or serious bodily injury.

■ Appellant asserts that before the jury could find appellant guilty of aggravated robbery, the jury had to find appellant used a deadly weapon. Appellant argues because the nailgun is not a firearm, the evidence is insufficient to show that a deadly weapon was used. Appellant does not cite any authority for the proposition that a deadly weapon must be a firearm. A "deadly weapon" is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; *or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.*" Tex.Penal Code Ann. § 1.07(a)(11)(A), (B) (emphasis added).

■ Appellant argues the nailgun was not a deadly weapon by virtue of its use or intended use. We disagree. If the nailgun is not a deadly weapon per se, *i.e.* a firearm, we then must look to the manner of the use or intended use to determine if

the nailgun was a deadly weapon. *Harris v. State*, 562 S.W.2d 463, 466 (Tex.Crim. App.1978). A deadly weapon is one which, in the manner used, is calculated to produce death or serious bodily injury. *Brown v. State*, 155 Tex.Crim. 233, 233 S.W.2d 578 (App.1950). In addition to examining the use or intended use of the weapon, we can determine if the weapon is a deadly weapon by examining several other factors, such as, the weapon's size and shape and its capacity to produce death or serious bodily injury. If the weapon is capable of causing death or serious bodily injury or is displayed in a manner conveying an express or implied threat that serious bodily injury or death will result if the aggressor is not satisfied, the weapon is a deadly weapon. *Jackson v. State*, 668 S.W.2d 723, 725 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

 We find this particular nailgun, because of the method of discharge, meets the definition of "firearm." We further find the victims' testimony as to their fear of injury or death, Officer Anderson's testimony, and the menacing nature of the nailgun itself is more than sufficient evidence to find that the nailgun is a deadly weapon even if the nailgun did not meet the required definition of "firearm." We overrule appellant's fourth, fifth, sixth and seventh points of error.

In his eighth and ninth points of error, appellant argues the evidence is insufficient to sustain the convictions in two of the robberies because a firearm was not used. Appellant argues the court charged the jury that before it could find appellant guilty of aggravated robbery, it had to find a deadly weapon, a firearm, was used in the commission of the offense. As stated above, the court charged the jury it could find appellant guilty of aggravated robbery if it found either that a deadly weapon, a nailgun was used, or if it found that a deadly weapon, a firearm was used. Based on our discussion under appellant's points of error four, five, six and seven, we overrule appellant's eighth and ninth points of error.

In his tenth point of error, appellant argues the trial court erred by not granting a mistrial after a Houston Police Officer allegedly made an improper comment to a juror. Martha McClure, a juror in this case, testified she was walking to the court on the first morning of trial and stopped at a traffic light. She was wearing her juror badge. While waiting for the light to turn green, two mounted patrol officers rode up beside McClure. One of the officers said, "remember, the word for the day is guilty." McClure testified when she heard the remark, she immediately told the officer he was not supposed to tell her that.

McClure testified she had not mentioned the incident to the other jurors, in fact she had forgotten the incident until someone came into the jury room and asked her about it. McClure further testified the officer's comment would not affect her ability to be a fair juror during appellant's trial. She said she was capable of ignoring the statement and would reach a verdict based solely upon the evidence presented at trial.

 An appellate court may not reverse a trial court's denial of a motion for mistrial unless appellant shows the trial court abused its discretion. *Babbs v. State*, 739 S.W.2d 646, 647 (Tex.App.— Houston [14th Dist.] 1987, no pet.). Before the trial court may grant a new trial, appellant must prove other evidence was received by the jury and the evidence was adverse or detrimental to appellant. If the other evidence is not detrimental to appellant, a new trial is not required. *Bratcher v. State*, 771 S.W.2d 175, 188 (Tex.App.— San Antonio 1989, no pet.). A passing remark or mere mention of a matter does not constitute receipt of other evidence. *Id.* Appellant submits being urged to vote "guilty" is more than a passing remark, especially when it comes from a peace officer. We disagree. There is nothing in the record to indicate the officer knew appellant or the facts of these particular cases. The officer's comment does not constitute receipt of other evidence, and appellant has failed to show the comment was adverse or detrimental to him.

Appellant argues even if the comment was not adverse or detrimental, this court should nevertheless reverse the case "to get the attention of the merry pranksters who might do something like this again...." We decline to do so. Absent appellant showing the juror received other evidence that was adverse or detrimental to appellant, he is not entitled to a new trial. We overrule appellant's tenth point of error.

Accordingly, we affirm the judgment of the trial court.