Affirmed and Memorandum Opinion filed June 29, 2004









Affirmed and Memorandum Opinion filed June 29, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-03-00607-CR
&

      14-03-00608-CR

____________

 

JOE
MANUEL CARDONA, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

__________________________________________________________

 

On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause Nos. 918,020 & 918,021

__________________________________________________________

 

 

M E M O R A N D U M   O P I N I O N








Appellant, Joe Manuel Cardona,
appeals his convictions for aggravated robbery with affirmative findings that a
deadly weapon was used in the commission of the offenses.  The trial court assessed punishment at
confinement for thirty-five years in the Institutional Division of the Texas Department
of Criminal Justice in each case, with the sentences to be served
concurrently.  In his sole issue,
appellant contends the State impermissibly exercised its peremptory challenges
on the basis of race, in violation of Batson v. Kentucky, 476 U.S.79,
106 S. Ct. 1712 (1986) and Texas Code of Criminal Procedure article
35.261.  We affirm.

FACTUAL BACKGROUND

Our discussion of the facts is
limited to those surrounding voir dire, as they form the basis for this
appeal.  At the close of jury selection,
the trial court asked the prosecutor and defense attorney if they had any
objections before the jury was empaneled. 
Appellant=s counsel
objected to the State=s strikes
against prospective jurors 1, 17, and 44 on the stated grounds that the State
had exercised these strikes based upon the race of the veniremembers.  Prospective jurors 1 and 17 were
African-American and prospective juror 44 was Hispanic.  

The following discussion then
took place at the bench:

STATE:  1 stated that she could not convict with one
witness[=s] testimony when the
Judge did her voir dire, and then she changed her mind.  44 stated that she had had a bad experience
with a police officer . . . .  So that
concerned me.  And her husband B , well, I didn=t know what she said.  That her husband is a planer with Protherm
[sic].  I didn=t know what it was.  I have no idea what Protherm was.  That plus the bad experience with the police
officer.  As far as 17, the fact that she
left all her employment information blank. 
She said she was a secretary; but she didn=t say where.  She didn=t say how long.  In addition, she seemed to be falling asleep
at least.  Your Honor, in my voir
dire.  I don=t know about [defense
counsel=s voir dire].  I wasn=t B 

COURT:  Any questions?

DEFENSE:  17 didn=t say anything.

STATE:  That=s correct.

DEFENSE COUNSEL:  Is that what you=re saying?  17 didn=t say anything.  I thought we were basing it on the answers.

STATE:  It=s also based on
information that they fill out and she intentionally left all that information
blank.  Makes me concerned.

DEFENSE:  On 17?

STATE:  Yes. 
Says secretary.  Doesn=t say where, how long, who
the employer is.








DEFENSE:  Yes, she did leave off
her employer.

STATE:  How long.

DEFENSE:  And how long.  Just two things that were left off.

COURT:  Is she married?

STATE:  I have no idea.

COURT:  Maybe she was single.  Maybe she wouldn=t fill anything in.  And in addition to that . . . , you believe
she was falling asleep?

STATE:  Yes. 
Both during Your Honor=s [voir dire] as well as mine.  Not so much falling asleep, but just closing
her eyes and putting her face in her hands.

DEFENSE:  That=s No. 17?

STATE:  That=s No. 17.

COURT: [Defense Counsel, do you have] any other questions?

DEFENSE:  No.  I
know that Juror No. B  I=m trying to remember.  There was another juror that was falling
asleep, too; but she might have been stricken for another reason.  No, she=s on the jury.  She=s the third.  She kept falling [a]sleep.  She=s a white female.

STATE:  The third one?

DEFENSE:  I can tell you exactly.  [D. D.], No. 9 is a white female.  She was also falling asleep throughout the trial,
and she=s on the jury.

STATE:  Not that I noticed.

DEFENSE:  She=s in the jury box.  She kept falling asleep at yours through
his.  I don=t know if she fell asleep
on me, but I remember.

COURT:  I didn=t notice either one.  I find the strikes are not racially
discriminatory.  Your Batson
challenge is denied.

 

The court then empaneled the
jury.  The juror information cards[1]
reveal that one of the jurors selected to serve on the jury had indicated on
her card that she was African-American. 
In addition, the record reflects that appellant=s counsel
agreed with the State to remove twenty-three members of the array, fifteen of
whom were minorities.  The State
exercised three other strikes against prospective jurors who indicated their
race as white.








DISCUSSION

A. 
Review of Batson Challenges

An accused has a right to a trial
by a jury whose members are selected in a racially‑neutral,
nondiscriminatory manner.  Batson v.
Kentucky, 476 U.S. 79, 85‑86, 106 S. Ct. 1712, 1717 (1986); Tex. Code Crim. Proc. Ann. art. 35.261
(Vernon 1989) (codifying the Batson standard).  We review a trial court=s ruling
in the light most favorable to the ruling, applying a Aclearly
erroneous@ standard of review.  Williams v. State, 804 S.W.2d 95, 101
(Tex. Crim. App. 1991).  

A Batson challenge
generally gives rise to a three‑step process.  First, the defendant must make a prima facie
case that a veniremember was peremptorily excluded on the basis of race.  Jasper v. State, 61 S.W.3d 413, 421
(Tex. Crim. App. 2001).  Next, the
prosecution must come forward with race‑neutral reasons for the
peremptory strike.  Simpson v. State,
119 S.W.3d 262, 268 (Tex. Crim. App. 2003). 
The defendant then has the opportunity to rebut the State=s
explanations.  Id.  The burden of persuasion remains with the
defendant to prove purposeful discrimination and that the State=s
race-neutral explanations were pretextual. 
Id.; see also Johnson v. State, 68 S.W.3d 644, 649 (Tex.
Crim. App. 2002).  If the State offers a
race‑neutral explanation before any inquiry on the prima facie case, the
issue of a prima facie case is moot.  Johnson,
68 S.W.3d at 649.








A trial court=s
decision on whether the opponent has proved a Batson claim turns, in
part, on observations made during the voir dire examination.  See Young v. State, 826 S.W.2d 141,
145 (Tex. Crim. App. 1991).  As the
supervisor of the voir dire process, the trial judge is in a position to
readily perceive discrepancies during jury selection.  Id.  Therefore, the court=s
determination of a Batson issue must be accorded great deference on
appeal.  Chambers v. State, 866
S.W.2d 9, 23 (Tex. Crim. App. 1993).  The
United States Supreme Court explained that unless a discriminatory intent is
inherent in the prosecutor=s
explanation, the reason offered will be deemed race-neutral.  Purkett v. Elem, 514 U.S. 765, 768,
115 S. Ct. 1769 (1995); see also Guzman v. State, 85 S.W.3d 242, 246
(Tex. Crim. App. 2002).  An appellate
court may reverse only if it is left with the Adefinite
and firm conviction that a mistake has been committed.@  Hill v. State, 827 S.W.2d 860, 865
(Tex. Crim. App. 1992). 

The Texas Court of Criminal
Appeals has set out a non‑exclusive list of factors to consider when
reviewing a trial judge=s ruling
on a Batson challenge.  Williams
v. State, 804 S.W.2d at 106; Whitsey v. State, 796 S.W.2d 707, 713‑14
(Tex. Crim. App. 1989).  Those factors
include:

1.  The reason given for the peremptory challenge
is not related to the facts of the case;

2.  There was a lack of questioning to the
challenged juror or a lack of meaningful questions;

3.  Evidence of disparate treatment, i.e., persons
with the same or similar characteristics as the challenged juror were not
struck;

4.  Disparate examination of members of the
venire, i.e., questioning a challenged juror so as to evoke a certain response
without asking the same question of other panel members; and

5.  An explanation based on a group bias where
the group trait is not shown to apply to the challenged juror
specifically.  

 

Williams, 804 S.W.2d at 106; Whitsey,
796 S.W.2d at 713‑14.  

B. 
Prospective Juror Number One

During the State=s voir
dire, the prosecutor elicited responses from prospective juror 1 that indicated
she would not be able to convict a person on the testimony of only one witness,
that she Awould need more.@  The judge rehabilitated prospective juror 1,
and she ultimately changed her mind.








A prospective juror=s initial
problem with a phase of the law is a Aplausible
reason@ to
strike a juror.  Vargas v. State, 838
S.W.2d 552, 555 (Tex. Crim. App. 1992). 
The fact that a prospective juror appears to be ultimately rehabilitated
does not mean that the State has to accept that juror.  Green v. State, 839 S.W.2d 935, 939
(Tex. App.CWaco 1992, pet. ref=d).  A juror=s ability
to apply the law and hold the State to the proper burden of proof is directly
related to the facts of any case; therefore, a prospective juror=s
expression of difficulty in applying the law is a race-neutral reason for a
strike.  Toy v. State, 855 S.W.2d
153, 157 (Tex. App.CHouston
[14th Dist.] 1993, no pet.).  

Moreover, the record reflects
that all the other prospective jurors who indicated they would be unable to
render a guilty verdict on the testimony of one witness were struck by
agreement between the attorneys.  Therefore,
appellant has not shown that the prosecutor treated the other veniremembers
disparately.  See Esteves v. State,
849 S.W.2d 822, 824 n. 2 (Tex. Crim. App. 1993) (disparate treatment as to the
sole or primary reason for a peremptory challenge may support a claim of
discriminatory intent).  The state showed
a race-neutral reason for striking prospective juror 1.

C. 
Prospective Juror Number Seventeen

Appellant asserts that the State=s
discriminatory intent is shown because the prosecutor failed to question
prospective juror 17 before striking her. 
The prosecutor gave two reasons for exercising a peremptory challenge
against prospective juror 17.  First, he
stated he struck this veniremember because she had her head in her hands and
appeared to be sleepy or inattentive during his voir dire.[2]  He also stated that she failed to fill in all
of her employment and personal information on her juror card.  Both of these reasons are race-neutral.  








A prospective juror=s
demeanor during voir dire, including a lack of eye contact with the prosecutor
or apparent disinterest, is a race-neutral reason for exercising a peremptory
challenge.  Barnes v. State, 855
S.W.2d 173, 174 (Tex. App.CHouston
[14th Dist.] 1993, pet. ref=d)
(holding State may strike a prospective juror who appears inattentive); see
also Gaines v. State, 811 S.W.2d 245, 249B50 (Tex.
App.CDallas
1991, pet. ref=d) (holding prosecutor may rely
on nonverbal aspects of veniremember=s answers
in assessing whether veniremember is hostile to prosecutor by being Aunresponsive@). 

Defense counsel asserted that
another prospective juror who appeared to be inattentive or sleepy was seated
on the jury.  Neither the trial court nor
the prosecutor noticed that the veniremember selected for the jury had appeared
sleepy, however.  In addition, Adisparate
treatment@ cannot be automatically imputed
in every situation where one of the State=s bases
for striking a veniremember would technically apply to another member the State
found acceptable.  Cantu v. State,
842 S.W.2d 667, 689 (Tex. Crim. App. 1992). 

Secondly, the fact that
prospective juror 17 failed to provide complete information on her juror card
is a valid, race-neutral reason for exercising a peremptory strike.  Inability to properly fill out
juror-information cards has been held to be a racially neutral reason for
excluding a juror.  Catley v. State,
763 S.W.2d 465, 467 (Tex. App.CHouston
[14th Dist.] 1988, pet. ref=d).  The record also reveals that the only other
prospective juror who left similar information blank, prospective juror 54, was
struck by agreement.  Thus, no disparate
treatment was shown.

D. 
Prospective Juror Number Forty-four

In response to the prosecutor=s query,
prospective juror 44 stated she had a bad experience with a member of law
enforcement.  A veniremember=s prior
unpleasant experience with individuals involved in law enforcement is a
race-neutral explanation for striking him. 
Hawkins v. State, 793 S.W.2d 291, 293B94 (Tex.
App.CDallas
1990, pet. ref=d.); Hernandez v. State,
808 S.W.2d 536, 544 (Tex. App.CWaco
1991, no pet.).

Other veniremembers who expressed
similar sentiments were struck by agreement, by the prosecutor, or by the
defense.  None of the veniremembers who
stated they had a bad experience with law enforcement served on the jury.  Thus, no disparate treatment was shown.








CONCLUSION

None of the prosecutor=s
explanations for the challenged peremptory strikes reflect an inherently
discriminatory intent.  Appellant failed
to rebut the State=s reasons
for striking the three prospective jurors and establish the reasons were merely
pretextual.  See Chamberlain v. State,
998 S.W.2d 230, 236 (Tex. Crim. App. 1999) (holding appellant failed to meet
his burden by offering no real rebuttal to prosecutor=s
explanation).  Thus, the trial judge could
have determined that the reasons for striking the three prospective jurors were
facially plausible and race-neutral.  See
Purkett, 514 U.S. at 768, 115 S. Ct. at 1771.  We conclude that the trial court=s finding
that the State=s explanations were race‑neutral
is supported by the record and is not clearly erroneous.  See Simpson, 119 S.W.3d at 268.  

Accordingly, we overrule
appellant=s sole issue and affirm the
judgments of the trial court.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum Opinion filed Jun 29, 2004.

Panel consists of Chief Justice Hedges and Justices Frost and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]   The juror cards are contained in our record as a
State=s exhibit.





[2]  The prosecutor=s seating chart, also included as a State=s Exhibit in our record, reflects counsel=s notation that prospective juror 17 was Asleeping@ and Acovering face.@