In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00031-CR
______________________________


CHARLES WILSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 03-0176X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Charles Wilson appeals his conviction by a jury for aggravated robbery. See Tex. Pen. Code
Ann. §§ 29.02, 29.03 (Vernon 2003). The trial court assessed punishment at eight years'
confinement. Wilson raises three issues on appeal, contending that the trial court erred in denying
his Batson challenge to the State's peremptory strikes and that the evidence is both legally and
factually insufficient. We affirm the judgment of the trial court.
            Ricky Dodge, loss prevention manager for Wal-Mart, observed Wilson leaving the Wal-Mart
store in Marshall, Texas, without paying for several items. Dodge and Adam Bryant, a member of
the Wal-Mart management team, approached Wilson in the parking lot and identified themselves as
"Wal-Mart Security." Wilson turned around and pulled out a pocketknife with the blade exposed. 
After displaying the knife, Wilson put down the stolen items and fled the scene. Michael Bogue, an
officer with the Marshall Police Department, observed Wilson being chased by Dodge and
apprehended Wilson approximately 300 yards from Wal-Mart. 
Batson Challenge
            Wilson's first point of error alleges the trial court erred in denying his challenge to the jury
panel based on Batson. The State used peremptory strikes on three of the seven African-Americans
within strike range. Wilson objected to the strikes pursuant to Batson. See Batson v. Kentucky, 476
U.S. 79 (1986). 
            The Equal Protection Clause of the United States Constitution prohibits a party from using
peremptory challenges to exclude otherwise qualified and unbiased persons from a jury solely on 
the basis of their race. Id. The Texas Legislature has codified the Batson rule in Tex. Code Crim.
Proc. Ann. art. 35.261 (Vernon 1989).
            In reviewing a Batson challenge, we must examine the racial make-up of the entire venire,
the voir dire examination, the prosecutor's explanation(s), and the appellant's rebuttal and
impeachment evidence in a light most favorable to the trial court's ruling. See Guzman v. State, 85
S.W.3d 242, 254 (Tex. Crim. App. 2002); Williams v. State, 804 S.W.2d 95, 101–02 (Tex. Crim.
App. 1991). We accord great deference to the trial court's findings of fact. Batson, 476 U.S. at 98
n.21; Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999). A trial court's ruling on a Batson
challenge will be reversed on appeal only on a finding that the decision was clearly erroneous. 
Guzman, 85 S.W.3d at 255; Williams, 804 S.W.2d at 101. A finding is clearly erroneous when,
although there is evidence to support the finding, the reviewing court is left with "the definite and
firm conviction that a mistake has been committed." DeBlanc v. State, 799 S.W.2d 701, 713 (Tex.
Crim. App. 1990).
            A proper Batson challenge consists of three steps. Ford v. State, 1 S.W.3d 691, 693 (Tex.
Crim. App. 1999) (citing Purkett v. Elem, 514 U.S. 765 (1995)). First, the party making a Batson
challenge must make a prima facie case of discrimination by showing that the totality of the relevant
facts gives rise to an inference of discriminatory purpose. Batson, 476 U.S. at 93–94. Second, the
burden then shifts to the proponent of the strike to make a reasonable race-neutral explanation for
the strike. Id.; Williams v. State, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996). As long as no
discriminatory intent is inherent in the explanation given, the explanation need not be persuasive or
even plausible. Purkett, 514 U.S. at 768; Williams, 937 S.W.2d at 485. Finally, if the proponent of
the strike produces a race-neutral reason for the strike, the party making the challenge shoulders the
burden of proving intentional discrimination. Purkett, 514 U.S. at 768; Williams, 937 S.W.2d at 485. 
The trial court must determine whether the party making the challenge carried the burden of
persuasion by proving purposeful discrimination. Miller-El v. Cockrell, 537 U.S. 322, 339 (2003);
Purkett, 514 U.S. at 767. In this final step, the critical issue becomes the persuasiveness of the
prosecutor's reason for the strike. Miller-El, 537 U.S. at 338–39; Purkett, 514 U.S. at 768. The trial
court must measure the credibility of the prosecutor's justification by, among other factors,
evaluating the prosecutor's demeanor; by how reasonable, or how improbable, the prosecutor's
explanations are; and by whether the prosecutor's justification has some basis in accepted trial
strategy. Miller-El, 537 U.S. at 339.
            To determine if the race-neutral reason is supported by the record, we consider whether the
reason offered as a basis for the peremptory strike was unrelated to the case, whether there was a lack
of meaningful questioning of the venire person involved, whether there was disparate treatment or
examination of persons with similar characteristics as the challenged venire person, and whether
there is historical evidence of racial discrimination. See Miller-El, 537 U.S. at 343; Williams, 804
S.W.2d at 105–06. 
            There were seven African-Americans who were within the potential range of selection. The
trial court took judicial notice that four African-Americans were selected for the jury. After Wilson
presented the trial court with the Batson challenge, the prosecutor asserted facially valid race-neutral
reasons for the strikes. The prosecutor alleged he struck Charlie Nesby because he was eighty-seven
years of age and did not appear to be engaged because he did not volunteer any answers and left most
of his juror questionnaire blank. The strike of Robert Humble was explained because he had
previously filed a lawsuit against a law enforcement agency over the death of a nephew. The
prosecutor alleged he struck Cornelia Clough because she appeared to lack the ability to readily
understand the questions propounded since she asked for questions to be repeated. The prosecutor
stated he struck a white juror for the same reason. 
            Because these explanations are "facially valid," the burden shifted to Wilson to prove
discrimination. Wilson's attorney pointed out that many of the jurors left blank portions of their
questionnaires but, as the trial court noted, none of the other questionnaires were as incompletely
answered as Nesby's. Wilson's attorney argued that Nesby's age alone should not be a sufficient
explanation. Age is an acceptable explanation for a peremptory strike and has been held not to
violate Batson. Brown v. State, 960 S.W.2d 265, 269 (Tex. App.—Corpus Christi 1997, no pet.);
see Silva v. State, 800 S.W.2d 912, 914–15 (Tex. App.—San Antonio 1990, no pet.); Moss v. State,
790 S.W.2d 731, 732 (Tex. App.—Houston [14th Dist.] 1990, no pet.). Even though Humble
testified he was not biased against law enforcement, the trial court did not err in finding that the
State's strike was nondiscriminatory based on information that Humble had sued a law enforcement
agency. Wilson's attorney also pointed out that he did not recall Clough asking for questions to be
repeated. Although the record does not indicate that either Clough or Davis asked the assistant
district attorney to repeat questions, the prosecutor could have determined that they did not
sufficiently understand the questions based on their demeanor and responses. "A juror's ability to
follow the instructions of the court, apply the law and hold the State to the proper burden of proof
is directly related to the facts of any case." Toy v. State, 855 S.W.2d 153, 157 (Tex. App.—Houston
[14th Dist.] 1993, no pet.). Striking a veniremember for inattentiveness or inability to understand
a court's instructions is not inherently racially discriminatory. 
            Because the State offered "facially valid" race-neutral explanations for the strikes, Wilson
bore the burden of proving the explanations were merely a pretext. After reviewing the racial
composition of the entire venire panel, the voir dire examination, the State's explanations for its use
of strikes, and Wilson's rebuttal in the light most favorable to the trial court's ruling, we are not left
with "the definite and firm conviction that a mistake has been committed" in the trial court's
overruling of the Batson challenge.
 
 
Legal Sufficiency
            In his second and third points of error, Wilson contends there is legally and factually
insufficient evidence to sustain the conviction. Specifically, Wilson argues there is insufficient
evidence he used a knife to maintain control of the property. 
Wilson was charged with aggravated robbery "while in the course of
commiting theft of property and with intent to obtain or maintain control of the
property, intentionally or knowingly threaten[ed] or place[d] Ricky Dodge in fear of
imminent bodily injury or death and the defendant did then and there use a deadly
weapon, to wit: a knife." 

            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991).
            When viewed in a light most favorable to the prosecution, a rational juror could have found
all the essential elements of aggravated robbery. Dodge testified he observed Wilson moving rather
quickly around the store and observed him place several items in a Wal-Mart sack he already had
in his possession. Dodge then observed Wilson pass the cash registers without paying for those
items. As Wilson was leaving the store, Dodge testified he approached Wilson and said, "Excuse
me." Wilson left the store without stopping. According to Dodge, he and Bryant followed Wilson
into the parking lot and said, "Wal-Mart Security." At this point, Dodge testified Wilson pulled a
knife and told him to get back. Dodge stated he jumped back, but stayed in front of Wilson as he
turned toward the store. Dodge testified Wilson pointed the knife in the general direction of Dodge
and Bryant, and "kept telling [them] to stay back." Bryant testified that, when Wilson turned around
with the knife in his hand, Wilson took a step toward him and then put the bag down and took a
couple of steps back. Wilson then ran away. Both Dodge and Bryant testified they were placed in
fear of serious bodily injury or death. Based on this testimony, a rational juror could have concluded 
Wilson appropriated property with the intent to obtain or maintain control of the property. In
addition, a rational juror could have concluded that Wilson intentionally or knowingly placed Dodge
and Bryant in fear of imminent bodily injury and that he exhibited a deadly weapon.
             Even if Wilson's contention that there is insufficient evidence he used the knife to maintain
control of the property is correct, there is still sufficient evidence he committed aggravated robbery. 
The element of "intent to obtain or maintain control of the property" addresses the actor's state of
mind during the theft or attempted theft, not his or her state of mind during the assault. White v.
State, 671 S.W.2d 40, 42 (Tex. Crim. App. 1984) (citing Ex parte Santellana, 606 S.W.2d 331, 333
(Tex. Crim. App. 1980)). Assault accompanying an escape immediately subsequent to an attempted
theft constitutes robbery. See id. (abandoned purse); McCall v. State, 113 S.W.3d 479, 481 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) (abandoned cigarettes). In this case, on being confronted
by Dodge and Bryant, and while in the course of committing theft,


 Wilson displayed the knife and
then left the bag and ran away. We find the evidence legally sufficient. 
Factual Sufficiency
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004, no pet.). There are two
ways in which we may find the evidence factually insufficient. First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough the State could not have met its burden of proof, we must find the evidence insufficient. Id. 
"Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually
insufficient under a beyond-a-reasonable doubt standard." Id. If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).
            The only witness presented by Wilson was George Lewis, an instructor at Southern
University in Shreveport and a lifelong friend of Wilson, who testified he had accompanied Wilson
to Wal-Mart that day and had observed the events that occurred in the parking lot. Lewis had been
waiting for Wilson and another acquaintance by the front door of the store. Although Lewis was not
close enough to hear the conversation, Lewis testified that, when "the guy walked up behind Charles,
and Charles, you know, like jumped around, turned around like who is you, you know, and Charles
pulled out a knife." Lewis stated Wilson "instantaneously" put down the bag containing the
merchandise and fled. According to Lewis, Wilson did not swing the knife in any manner or take
any steps toward Dodge or Bryant. Bryant also testified there was no swinging of the knife or
lunging with the knife. Viewed in a neutral light and after weighing the evidence supporting and
contravening the conviction, a rational juror could have found that Wilson appropriated property
with the intent of obtaining or maintaining control; intentionally and knowingly placing Dodge and
Bryant in fear of imminent bodily injury; and exhibited a deadly weapon. 
            For the reasons stated, we affirm the trial court's judgment.
 
                                                                                    Jack Carter
                                                                                    Justice

Date Submitted:          July 28, 2004
Date Decided:             September 3, 2004

Do Not Publish