

# IN THE
# TENTH COURT OF APPEALS

————————————

## No. 10-09-00308-CR

**BRODERICK KEITH LEWIS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

————————————

**From the 12th District Court**
**Walker County, Texas**
**Trial Court No. 23,958**

## MEMORANDUM  OPINION

Broderick Keith Lewis was convicted of the offense of aggravated robbery after a trial before the court.  *See* TEX. PENAL CODE ANN. § 29.03 (West 2003).  His punishment was assessed at 40 years in prison.  Lewis complains that there was a fatal variance between the indictment and the proof at trial which rendered the evidence legally insufficient, that exhibits admitted into evidence have been irretrievably lost due to no fault of Lewis, and that he received ineffective assistance of counsel.  We affirm the judgment of the trial court.

**State's Brief**

The State's brief was due on September 6, 2010. On September 13, 2010, after not receiving a brief, this Court sent a letter instructing the State to file a brief or a request for extension within 14 days or to notify the Court that no brief will be filed. However, no brief has been filed, and the State has not requested additional time to file a brief.

There is no rule specifically addressing the State's failure to file a brief in response to an appellant's brief. In *Siverand v. State*, 89 S.W.3d 216 (Tex. App.—Corpus Christi 2002, no pet.), the court discussed the available options when the State does not file a brief. The first option would be to accept an appellant's argument and reverse the conviction. *Siverand v. State*, 89 S.W.3d at 219. However, the trial judge would be at a disadvantage with no one to defend his ruling. *Id*. The second option would be to abandon our roles as impartial jurists, become advocates for the State, and advance arguments on behalf of the State to affirm the trial court's judgment. *Id*. Such a position would run afoul of the Code of Judicial Conduct requiring impartiality and also the rules of appellate procedure requiring parties to advance their own arguments. TEX. R. APP. P. 38.1(h) and 38.2(a)(1); *Siverand v. State*, 89 S.W.3d at 219. We are unable to advance arguments on behalf of either party. *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995); *Siverand v. State*, 89 S.W.3d at 219.

As stated in *Siverand*, we believe the better option is to treat the State's failure to file a brief as a confession of error. *Siverand v. State*, 89 S.W.3d at 220; *see also Hawkins v. State*, 278 S.W.3d 396, 399 (Tex. App.—Eastland 2008, no pet.). The confession of error by the State is not conclusive. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App.

2002); *Siverand v. State*, 89 S.W.3d at 220. We must make an independent examination of the merits of the issues presented for review. *Siverand v. State*, 89 S.W.3d at 220. We are limited in that examination to the arguments advanced by the State in the trial court so that we do not advance new arguments on behalf of the State. *Saldano v. State*, 70 S.W.3d at 884; *Hawkins v. State*, 278 S.W.3d at 399; *Siverand v. State*, 89 S.W.3d at 220.

## Lost Record

Lewis complains in his third issue that his conviction must be reversed because exhibits necessary to the resolution of this appeal were lost. Upon the filing of the reporter's record, it was determined that many of the exhibits were not included and that others had been replaced by consulting with the State and not the defense. We abated the appeal for a hearing before the trial court as required by Rule of Appellate Procedure 34.6. TEX. R. APP. P. 34.6(e)(2) & (f). At that hearing, the majority of the lost exhibits were ultimately located and included in a supplemental record. Those that were not located were determined by the trial court to not be necessary to the appeal's resolution. TEX. R. APP. P. 34.6(f)(3). Lewis did not object to those exhibits before the trial court and has not filed any additional briefing after the abatement complaining that the exhibits are inaccurate or that the exhibits still missing are necessary to the resolution of this appeal. Therefore, we overrule issue three.

## Variance

In his first issue on appeal, Lewis argues that the trial court erred in finding him guilty of aggravated robbery because there was a fatal variance between the indictment and the evidence at trial, which rendered the evidence legally insufficient. The

indictment alleged that Lewis committed the offense of aggravated robbery and that he used or exhibited a deadly weapon, to wit: a firearm. Lewis contends that because there was evidence that a BB gun rather than a firearm was used in the robbery and there was no evidence of the BB gun's character as a deadly weapon, the evidence was legally insufficient.

**Facts**

Troy Joseph testified at trial that he was working the night shift at Sonic. He and some other employees, Kimberly Clifton and Don Huey, went in his pickup to the bank to make the nightly deposit. Joseph pulled up to the deposit box, and he saw two individuals that suddenly appeared from around a corner wearing ski masks approach his pickup and one of them was holding a "gun," which was pointed at him. Joseph attempted to flee, accelerated and lost control of his pickup. The pickup flipped and rolled down an embankment. Joseph and the other occupants were able to get out of the pickup, ran away, and called 911.

Joseph described the gun he saw as a "handgun, maybe like a 9 millimeter. Something like a Glock or a Ruger. Not a large gun but definitely wasn't a revolver or anything like that, something with a clip. It was a dark-handled gun. I'm not sure if it was metallic or black metallic, something like that." Joseph acknowledged that there are BB guns that look similar to a 9 millimeter Glock; however, the BB guns generally have markings in orange that demonstrate that they are not real firearms. Joseph testified that he is familiar with guns from prior employment and personal ownership of them and that there was nothing about the gun he saw to indicate it was a BB gun.

Kimberly Clifton was sitting in the front seat of Joseph's pickup on the night of the offense. She testified that she saw two men wearing face masks with the eyes cut out of them approach the pickup and that both men had a gun. One of them was pointed at Joseph's chest. Joseph attempted to drive away, but lost control of the pickup and it rolled over down a hill. After the truck rolled over, she ran away and was chased by a person in a black hoodie who had a gun in his hand. She escaped by getting into a car that a co-worker was driving that had been right behind Joseph's truck for safety purposes at the bank. She was in fear for her life during the incident. Clifton described the guns as black and shiny, metal, and automatic rather than a revolver. Clifton said she is familiar with BB guns that look similar to real guns.

Detective Kenneth Foulch investigated the robbery. Detective Foulch reviewed the surveillance video from the bank. In the video, two people are present. Detective Foulch testified that one of the persons in the video appears to have a "handgun" and that the gun looks like a firearm. Lewis came to the police station voluntarily for questioning and initially told Foulch that he was not involved but that Joshua Wallace had come to his residence and told him that he had committed a robbery later that night and showed him a black gun. Lewis consented to a search of his residence during which a white ski mask with eye holes cut out and a black hoodie were located in a bedroom. Lewis then stated that those items belonged to Wallace who he then contended actually lived at his residence.

The video of the robbery from the bank indicates that two hooded individuals approached a white pickup. Both individuals appeared to have some type of gun in

their hands and both individuals pointed them at the white pickup driven by Joseph. After the truck attempted to flee, both of them took off running after the truck.

During his investigation, Detective Foulch spoke with a person claiming to have knowledge of the robbery. Based upon that conversation, Detective Foulch went to a location to recover a handgun. At that location, Detective Foulch found a gun underneath a metal building. Detective Foulch testified that the gun he found looked like a "9 millimeter sigasauer." The State introduced the gun into evidence. Detective Foulch testified that the gun he found was actually a BB gun although it appears to be a real gun. Detective Foulch was never able to determine if the BB gun he found was the gun used in the robbery or if it was connected to Lewis.

Some months after his arrest, Lewis was back at the police station to undergo a polygraph examination. As the examiner was preparing Lewis by asking him the questions he would formally ask during the examination, Lewis admitted to participating in the robbery, stating "I didn't do it but I was part of it."

Joseph was recalled to the stand and shown the BB gun admitted into evidence by the State. Joseph testified that the BB gun could have been the gun used in the robbery. While in jail, Lewis separately told two jail employees that the gun used by Wallace in the robbery was a BB gun. Lewis told the first jail employee that he was in the car with Wallace and that the masks and guns were already in the car when he got into it. Further, Lewis told that employee that the robbery was committed by Wallace and Don Huey. Lewis told the second jail employee that he was there but did not take

part in the robbery, although Wallace gave him $500 of the money that was stolen in the robbery.

**Applicable Law**

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument. *Id*. We treat variance claims as a problem with the sufficiency of the evidence. *Id*. A variance that is not prejudicial to a defendant's substantial rights is immaterial. *Gollihar v. State*, 46 S.W.3d at 248. In determining whether a defendant's substantial rights have been prejudiced we consider whether (1) the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and (2) whether prosecution under the indictment as drafted would subject the defendant to the risk of being prosecuted later for the same crime. *Id*.

**Sufficiency of the Evidence**

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the

responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, No. AP-76,020, ___ S.W.3d ___, ___, 2011 Tex. Crim. App. LEXIS 1222, *43-44, 2011 WL 4347044, *16 (Tex. Crim. App. Sept. 14, 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

**Analysis**

Lewis argues that there is a variance between the indictment and evidence offered because the State did not prove the use of a firearm, but only a BB gun. Because the State did not file a brief, we are limited to the arguments the State presented to the

trial court. The State argued at trial that the BB gun looked like a real gun. The trial court asked whether a finding that the gun used in this case was a BB gun would be a problem because the indictment alleged use of a firearm. The State responded:

> No, sir, because I believe that the indictment is based on what the victim's perspective was. My argument about the BB gun is in response to what she's saying; but I believe that the case is based on the victim's perspective and that they believed that it was a firearm; and we're not offering that as the gun used in this case. So I don't think it matters at all. They believed it was a firearm. We don't have any way to know, because we don't know whether we've ever recovered the real weapon or not; and I think it is sufficient for them to testify that they believed that he had a gun; and that makes it sufficient to meet the elements of the indictment.

A "firearm" is a deadly weapon, per se. *See Boyett v. State*, 692 S.W.2d 512, 517 (Tex. Crim. App. 1985); *Arthur v. State*, 11 S.W.3d 386, 398 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). A "gun," however, is a much broader term than "firearm" and may include such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns. *See Benavides v. State*, 763 S.W.2d 587, 588 (Tex. App.—Corpus Christi 1988, pet. ref'd); *Arthur v. State*, 11 S.W.3d at 398. When the State alleges in the indictment for aggravated robbery that the deadly weapon used by the defendant was a firearm it is required to prove, beyond a reasonable doubt, that the deadly weapon used was, in fact, a firearm. *See Gomez v. State*, 685 S.W.2d 333, 335-36 (Tex. Crim. App. 1985); *Arthur v. State*, 11 S.W.3d at 398.

"Testimony using any of terms 'gun,' 'pistol' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used." *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979); *see also Price v. State*, 227 S.W.3d 264, 266-67 (Tex.

App.—Houston [1st Dist.] 2007, pet. dism'd, untimely filed) (holding, based on testimony by one victim that the appellant put a gun in her face and second victim that the appellant pointed a gun at him, the jury could have found beyond a reasonable doubt that the gun the appellant used and exhibited during the robbery, which was never recovered, was a firearm); *Brown v. State*, 212 S.W.3d 851, 860-61 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (op. on reh'g) (holding evidence was legally sufficient to support finding that the gun used was a firearm based on witness testimony that a gun was pointed at her and the children); *Davis v. State*, 180 S.W.3d 277, 286 (Tex. App.—Texarkana 2005, no pet.) (holding evidence was legally sufficient to allow the jury to conclude that the appellant used a firearm where the victim testified that appellant pointed a gun at her and she was afraid she was going to die that night, even though she was not asked to identify the type of weapon and the record contained no other relevant evidence on that point).

Additionally, where the accused threatens the victim with a gun, the act itself suggests that the gun is a firearm rather than merely a gun of the non-lethal variety. *Edwards v. State*, 10 S.W.3d 699, 701 (Tex. App.—Houston [14th Dist.] 1999), pet. dism'd, improvidently granted, 67 S.W.3d 228 (Tex. Crim. App. 2002); *Toy v. State*, 855 S.W.2d 153, 159 (Tex. App.—Houston [14th Dist.] 1993, no pet.); *Benavides v. State*, 763 S.W.2d 587, 589 (Tex. App.—Corpus Christi 1988, pet. ref'd).

Lastly, we note that the trial court as factfinder is free to draw reasonable inferences and make reasonable deductions from the evidence as presented within the context of the crime. *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Toy*, 855 S.W.2d at 159; *Benavides*, 763 S.W.2d at 588-89. As such, the factfinder may draw the reasonable inference or make the reasonable deduction the gun used in the commission of the crime was a firearm. *Cruz*, 238 S.W.3d at 388; *Davis*, 180 S.W.3d at 286; *Benavides*, 763 S.W.2d at 589.

At trial, the State argued that it was only required to show that the victim believed at the time of the offense that the item used during the commission of the robbery was a firearm. The evidence showed that both Joseph and Clifton had familiarity with guns and believed the weapons used in the offense were guns, although a BB gun can look like a real gun. The video of the robbery shows what appear to be firearms being pointed at the victims. There was no evidence other than statements made by Lewis himself that the weapons used were actually BB guns. The trial court could have determined that anything Lewis had told others was not credible, having given differing accounts of his involvement in the robbery and having accused Huey as being the second robber, which was impossible because Huey was a passenger in Joseph's pickup during the robbery. The trial court could have determined that the BB gun admitted into evidence had no connection at all to the robbery other than appearing to be similar looking in size and color to the guns actually used. Viewing the evidence in the light most favorable to the verdict, there was not a variance between the

indictment and the evidence presented at trial. The evidence was legally sufficient for the trial court to have found that the robbery was committed with a firearm. *See Wyatt v. State*, No. 14-10-00872-CR, 2011 Tex. App. LEXIS 3914 at *12 (Tex. App.—Houston [14th Dist.] May 24, 2011, no pet.) (mem. op.) (not designated for publication) (evidence legally insufficient to determine gun was a firearm although a BB gun was recovered from the defendant's residence because the evidence did not show that the gun was connected to the robbery). We overrule issue one.

## Factual Sufficiency

Lewis complains in his second issue that the evidence was factually insufficient for the trial court to have determined that a deadly weapon was used in the offense because of the lack of evidence of a firearm. After Lewis filed his brief, the Court of Criminal Appeals has determined that factual sufficiency no longer applies in criminal cases. *See, e.g., Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.); *Martinez v. State*, 327 S.W.3d 727 (Tex. Crim. App. 2010). Lewis does not argue that the evidence of a deadly weapon was legally insufficient, and based on our holding in issue one that the evidence was legally sufficient for the trial court to have determined that a firearm was used in the commission of a robbery, it is unnecessary to conduct a sufficiency analysis pursuant to *Jackson v. Virginia*. We overrule issue two.

## Ineffective Assistance of Counsel

Lewis complains that he received ineffective assistance of counsel because his trial counsel failed to subpoena Huey to testify on his behalf. To prevail on an ineffective assistance claim, Lewis must establish that (1) his trial counsel's performance

was deficient by falling below an objective standard of reasonableness and (2) his trial counsel's deficiency caused him prejudice, which means that there is a probability sufficient to undermine confidence in the outcome that but for his trial counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010).

Lewis is required to satisfy both prongs by a preponderance of the evidence; failure to demonstrate either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893. It is not necessary to conduct the *Strickland* analysis in any particular order; if an appellant cannot demonstrate sufficient prejudice, a court may dispose of the claim on that ground. *Strickland*, 466 U.S. at 697. When making this determination, any constitutionally deficient acts or omissions will be considered in light of the totality of the evidence before the jury. *Ex parte Ellis*, 233 S.W.3d 324, 31 (Tex. Crim. App. 2007).

Lewis's trial counsel filed a motion for new trial based on Huey's non-attendance at trial but did not allege ineffective assistance for failing to call Huey. The motion was denied. However, a hearing to determine his trial counsel's strategy would not be necessary when determining whether Lewis established the prejudice ground of *Strickland* because counsel's trial strategy is not relevant to whether the result of the proceeding would have been different. Lewis contended in his motion for new trial

that he was "denied a fair trial as a material defense witnesses (sic), Don Huey, was kept from the trial for fear of arrest. Mr. Huey would have testified he, as a witness/victim of this robbery, saw the weapons used and thought they were BB guns." Lewis contends that this "would have further bolstered the evidence that no deadly weapon was shown or used during the robbery." During the trial, Lewis's trial counsel stated that Huey would not voluntarily come to the trial because he had outstanding warrants pending against him. Additionally, Huey had been implicated as an accomplice in the robbery and there is no evidence in the record to establish that Huey would indeed have so testified. We do not find that Lewis has met his burden to establish that but for this single alleged error during his trial that the result would have been different. We overrule issue four.

**Conclusion**

Finding no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed January 4, 2012
Do not publish
[CRPM]