Mark Sam ARTHUR, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–00311–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 13, 2000.

Kurt B. Wentz, Houston, for appellants.

Eric Kugler, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, Mark Sam Arthur, was convicted by a jury of aggravated robbery and sentenced to life imprisonment. On appeal, appellant challenges his conviction in six points of error. Appellant argues, in points one and two, the evidence was legally and factually insufficient to support the jury finding that a firearm was used or exhibited; in points three and four, the trial court erred in allowing evidence of an extraneous offense; and in points five and six, the trial court erred in overruling appellant's objection to an improper jury argument by the State. We affirm.

## FACTUAL BACKGROUND

One evening, at about 9:00 p.m., the complainant, Bob Boney, drove to a convenience store in Houston to refuel his Cadillac automobile. He filled his tank with gas, paid the clerk, returned to his car, and sat down in the driver's seat. As he sat down, appellant walked up, displayed a gun and calmly said, "give me the keys and get out of the car." The complainant did as he was told. After the complainant exited the vehicle and gave appellant the keys, appellant started the car and drove away. The robbery lasted about twenty seconds. Kim Trujillo, a witness who testified for the State, also identified appellant as the individual who held a gun on the complainant and stole his car.

Three days later the complainant's Cadillac was stopped for a traffic violation in Angleton. Once stopped, six men ran from the vehicle, while one woman was detained. A search of the Cadillac revealed thirteen rounds of nine-millimeter ammunition. Three days after recovery of the complainant's vehicle, Angleton police officer Richard DeLeon stopped a red Saturn, driven by appellant, for a traffic violation. There were three passengers in the vehicle. Next to appellant, in the center console, was a black, Glock nine-millimeter handgun. Appellant later confessed to committing the robbery and stated that he had used a "Glock."

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first and second points of error, appellant complains that the evidence does not support his conviction for aggravated robbery because the evidence is legally and factually insufficient to show that a firearm was used as alleged in the indictment.

In conducting a legal sufficiency review of the evidence, an appellate court must view the evidence adduced at trial in the light most favorable to the verdict, and determine if any rational fact finder could have found the crime's essential elements to have been proven beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 165 (Tex.Crim.App.1991). The reviewing court will examine the entire body of evidence; if any evidence establishes guilt beyond a reasonable doubt, the appellate court may not reverse the fact finder's verdict on grounds of legal insufficiency. See id.

In reviewing the evidence for factual sufficiency, an appellate court will examine all the evidence without the prism of "in the light most favorable to the prosecution," and will set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). If there is sufficient competent evidence of probative force to support the finding, a factual sufficiency challenge will fail. See Taylor v. State, 921 S.W.2d 740, 745 (Tex. App.—El Paso 1996, no pet.).

The jury is the sole judge of the facts, the witnesses' credibility, and the weight

to be given the evidence. *See Clewis,* 922 S.W.2d at 129; *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). Accordingly, the jury may choose to believe or not believe any portion of the witnesses' testimony. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986). If the record contains conflicting testimony, conflict reconciliation is within the jury's exclusive province. *See Heiselbetz v. State,* 906 S.W.2d 500, 504 (Tex.Crim.App.1995). A reviewing court may not substitute its conclusions for that of the jury, nor may it interfere with the jury's resolution of conflicts in the evidence. *See id.*

█ A person commits the first degree felony of aggravated robbery if he uses or exhibits a deadly weapon in the commission of a robbery. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 1994). When the State alleges in the indictment for aggravated robbery that the deadly weapon used by the defendant was a firearm, as it did in this case, it is required to prove, beyond a reasonable doubt, that the deadly weapon used was, in fact, a firearm. *See Gomez v. State,* 685 S.W.2d 333, 335–36 (Tex.Crim. App.1985).

█ A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon 1994). A "firearm" is therefore a deadly weapon, *per se. See Boyett v. State,* 692 S.W.2d 512, 517 (Tex. Crim.App.1985). A "gun," however, is a much broader term than "firearm" and may include such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns. *See Benavides v. State,* 763 S.W.2d 587, 588 (Tex.App.—Corpus Christi 1988, pet. ref'd) (citing *O'Briant v. State,* 556 S.W.2d 333, 335–36 (Tex.Crim.App.1977)).

█ The question we must answer is whether the State sufficiently proved that the gun used against the complainant was indeed a firearm. Contrary to appellant's contention, the record is replete with evidence that he used or exhibited a firearm as alleged in the indictment. At trial the complainant testified that the appellant "put a gun in my face." He further described the gun as "a black, large gun, and I think you would term it as an automatic." When showed State's exhibit ten, the nine-millimeter Glock firearm found in appellant's possession upon arrest, the complainant said, "that gun is similar or could be the gun that he used on me." Kim Trujillo, an eyewitness to the robbery, stated that the appellant had a gun in his hand and was aiming it at the complainant. She described the gun as a "black automatic weapon." She further stated the weapon she saw was not a revolver and that it looked like State's exhibit ten.

Officer DeLeon identified State's exhibit ten as the black, nine-millimeter, semi-automatic Glock handgun he recovered from the center console of the vehicle appellant was driving. This handgun was admitted into evidence. The officer then testified that the gun was a firearm, and that it was a deadly weapon "capable of killing someone."

Detective Kyle Brown testified that appellant, in a videotaped confession, mentioned using a Glock during the aggravated robbery of the complainant. Detective Brown stated that Glocks are firearms.

Based on this testimony, a rational trier of fact could conclude beyond a reasonable doubt that appellant used or exhibited a firearm as alleged in the indictment. Further, the jury's verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We, therefore, overrule appellant's first and second points of error.

## EVIDENCE OF EXTRANEOUS OFFENSE

█ Appellant's third and fourth points of error allege the trial court reversibly erred in overruling his objection

to evidence of extraneous offenses committed by the accused. We review a trial court's decision whether to admit evidence of an extraneous offense under an abuse of discretion standard. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

It is well established that an extraneous offense is not admissible at trial simply as character evidence to show that the accused acted in conformity with that offense. *See* Tex.R. Evid. 404(b). An extraneous offense is admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.*

Appellant objected, out of the presence of the jury, to Officer DeLeon's testimony concerning the traffic stop of appellant. Although the red Saturn appellant was driving was stolen, DeLeon testified only to the fact that he made a traffic stop on a red Saturn, the appellant was the driver, and a nine-millimeter pistol was recovered from the center console. Officer DeLeon never mentioned the fact that the red Saturn was a stolen vehicle, nor was any inference to that fact made.[1]

■ If the challenged evidence does not show that an offense was committed or does not connect the defendant to the offense, then it is not evidence of an extraneous offense. *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.1993); *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex.Crim.App.1992). We agree with the trial court's observation that "a traffic stop" does not create an inference that the

car in which appellant was found was a stolen vehicle. Further, no such inference was made from the testimony of Officer DeLeon. We therefore hold that the testimony complained of did not reference an extraneous offense and the trial court did not abuse its discretion in allowing the testimony. Accordingly, appellant's third and fourth points of error are overruled.

## IMPROPER JURY ARGUMENT

■ In his fifth and sixth points of error, appellant complains the trial court reversibly erred, during the punishment phase, in overruling his two objections to the State's plea to the jury to increase appellant's punishment due to other crimes he had committed. As these points of error are closely related, we will address them together.

During final arguments, the State made the following statements to the jury:

[Prosecutor]: Don't leave it up to any other jury or any other case that this defendant has against him to do what the 12 of you-all know is the right and just thing to do in this case.

Earlier this week the 12 of you-all realized that this defendant Mark Arthur is an aggravated robber. When you found him guilty you didn't know what you know now. He's also a murderer, an aggravated assaulter, and more aggravated robberies. Don't leave it up to somebody else in doing what the 12 of you know is the right thing to do in this case.

[Defense Counsel]: Your Honor, I am going to object to this improper jury

---

1. During the course of arguing the objection, the following dialogue transpired between appellant's defense counsel and the court.

 [Defense Counsel]: We now have my client ... in a ... traffic stop.... The only inference for my client being in this red Saturn ... is the car is stolen. I mean, you can't simply disguise the traffic stop as anything but a stop for a stolen car.

 [The Court]: A traffic stop could be [for] running a red light. Or, he could be in a car that belongs to a friend. I think that in

and of itself is what [the prosecutor] told me his proffer is. That doesn't show anything necessarily incriminating. I guess that's about as clean as it's going to get.

 [Defense Counsel]: We think the overwhelming inference when we're talking about a carjacking is, is that this is another car that came to be in my client's possession as a result of unlawful means.

 The trial court overruled appellant's objection.

argument. He's asking the jury to assess a punishment for other cases not only Mr. Boney's cases before him.

[The Court]: Objection is overruled.

[Prosecutor]: In response to Defense Counsel's argument about the other cases, I instruct you to the jury charge. The judge has given you-all the law. Page 3 of the jury charge: You may consider evidence of an extraneous crime or bad act in assessing this defendant's punishment in this cause number. You know that because you have heard a lot about other stuff.

The aggravated robbery case of Bob Boney was the guilt portion of this case. For the two days that you heard about that case your job in the first phase of the trial was to assess that crime and that crime only. Now your duties are a little bit different. Your duties are taken away not only from Bob Boney but your duties today are to assess the defendant in light of all that he has done. Not just Bob Boney, but all the others.

[Defense Counsel]: Your Honor, we would object. It still is punishment for the case involving Mr. Boney.

[The Court]: Objection is overruled.

The state concluded by asking the jury to consider a life sentence.

■■■■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *See Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980); *Monkhouse v. State*, 861 S.W.2d 473, 478 (Tex.App.—Texarkana 1993, no pet.). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *See Felder v. State*, 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). In order to constitute reversible error, the jury argument must be extreme, manifestly improper, or inject new and harmful facts into evidence. *See McKay v. State*, 707 S.W.2d 23, 36 (Tex.Crim.App.1985).

Appellant cites *Klueppel v. State*, 505 S.W.2d 572 (Tex.Crim.App.1974), to support his argument that it was improper for the State to invite the jury to assess additional punishment for an extraneous offense. In *Klueppel*, the defendant was convicted of possession of marijuana. The prosecutor argued to the jury, however, "[y]ou come back and in essense [sic] say, we the Jury, find that the cost for possessing six and a half pounds of marijuana *and LSD* and selling it and all these other things that he has done, is, and you put a figure in that slot." *Klueppel* at 573 (emphasis added). The court in *Klueppel* held that the prosecutor may not ask the jury to punish the defendant for offenses extraneous to the indictment. *See Klueppel* at 574. The Court of Criminal Appeals further explained *Klueppel* in *Lomas v. State*, 707 S.W.2d 566, 568–69 (Tex.Crim.App. 1986). In *Lomas*, the court explained that the prosecutor may elicit evidence of extraneous offenses surrounding the commission of the offense, and ask the jury to consider how these facts and circumstances aggravate the offense charged. The prosecutor may not, however, encourage the jury to include additional punishment for a collateral crime. *See id.* The *Lomas* court stated that "[t]hese competing statements of law create a delicate balance between a defendant's right to a sentence aimed at only punishing him for a charged offense and society's interest in punishment that is based upon a complete understanding of a defendant's *mens rea* regarding that charged offense." *Id.*

*Lomas* and *Klueppel* are distinguishable, however, because they were decided under a previous version of article 37.07 § 3(a) of the Code of Criminal Procedure. At the time *Lomas* and *Klueppel* were decided, article 37.07 § 3(a) did not allow

evidence of unadjudicated extraneous offenses to be introduced during the punishment phase of the trial. *See* previous version at TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon 1981));[2] *see also Grunsfeld v. State*, 843 S.W.2d 521, 526 (Tex.Crim. App.1992) *superseded by statute* (holding that admission of unadjudicated extraneous offense evidence at the punishment phase of a non-capital trial was reversible error). Subsequent to *Lomas* and *Klueppel*, in 1993, the Texas Legislature amended article 37.07 § 3(a) to allow the jury to consider at the punishment phase of a trial extraneous offenses that were not adjudicated, but only if the State proved beyond a reasonable doubt that the offense occurred and that the defendant committed the offense. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, (current version at TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp.1999));[3] *see also Paez v. State*, 995 S.W.2d 163, 167 (Tex.App.—San Antonio 1999, pet. ref'd).

 For purposes of assessing punishment, the prosecution may now offer evidence of any extraneous crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible. *See Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.1999); *see also* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a). "Prior crimes or bad acts are introduced to provide additional information which the jury may consider in determining what sentence the defendant should receive." *Fields*, 1 S.W.3d at 688; *Davis v. State*, 968 S.W.2d 368, 373 (Tex.Crim.App.1998). Once the trial judge has made a threshold determination that evidence regarding an extraneous crime is relevant, the statute requires that such evidence may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant. *See Fields*, 1 S.W.3d at 688; *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996). After this requirement is met, the fact-finder may use the evidence however it chooses in assessing punishment. *See Fields*, 1 S.W.3d at 688. By allowing the State to present evidence about extraneous crimes or bad acts, jurors learn "as much useful information as possible in deciding the appropriate punishment for the individual defendant." *Mendiola v. State*, 924 S.W.2d 157, 163 (Tex.App.—Corpus Christi 1995, rev.denied) (quoting *Bowser v. State*, 816 S.W.2d 518, 521 (Tex.App.—Corpus Christi 1991, no pet.)).

**2.** The previous version of art. 37.07 § 3(a) reads as follows: "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged."

**3.** The current version of art. 37.07 § 3(a) reads as follows: "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. A court may consider as a factor in mitigating punishment the conduct of a defendant while participating in a program under Chapter 17 as a condition of release on bail. Additionally, notwithstanding Rule 609(d), Texas Rules of Criminal Evidence, and subject to Subsection (h), evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of: (1) a felony; or (2) a misdemeanor punishable by confinement in jail."

In this case, during the punishment phase of the trial, the State introduced evidence of several extraneous offenses including a capital murder, aggravated robbery, and two aggravated assaults committed by the appellant. The State, in its closing argument, summarized the extraneous offense evidence and urged the jury to assess appellant's punishment "in light of all that he has done."[4] Contrary to appellant's assertions, we do not believe the complained of argument by the State was improper. The prosecutor was allowed to argue to the jury that they could consider all of the extraneous offenses in determining appellant's punishment. Such an argument is permissible in light of the changes to article 37.07 § 3(a) made by the Legislature in 1993. We therefore hold the jury arguments in question were proper and the trial court did not err in overruling appellant's objections. We overrule appellant's fifth and sixth points of error. The trial court's judgment is affirmed.

**4.** The State further referred the jury to the jury charge, which stated, "[y]ou may consider evidence of an extraneous crime or bad act. . . ."