Daveon Robinson v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-315-CR

DAVEON ROBINSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A jury found appellant, Daveon Robinson (“Robinson”), guilty of aggravated assault and sentenced him to 20 years’ imprisonment.  In five points on appeal, Robinson complains that (1 & 2) the evidence is legally and factually insufficient to support the jury’s verdict, (3) the evidence is insufficient to prove that the knife used is a deadly weapon, (4) the trial court abused its discretion when it ordered Robinson tried in shackles, and (5) the trial court abused its discretion by overruling Robinson’s objection to extraneous  evidence.  We will affirm. 

II. Background Facts and Procedural History 

On the night of October 16, 2000, Vicki Turner (“Turner”) was entertaining several other persons in her apartment when Robinson cut her throat.  She was taken by ambulance to John Peter Smith Hospital where she underwent emergency surgery to stop the bleeding.  Police found a knife near the sidewalk about 45 feet from Turner’s apartment and a knife sheaf inside Turner’s apartment.  When interviewed by police, Turner identified Robinson as her assailant.  Robinson was subsequently indicted by a grand jury of aggravated assault with a deadly weapon to which he pleaded not guilty.  At trial, Turner identified Robinson as her assailant and testified that the knife found by police was the knife Robinson used to cut her throat.  She stated that she was seated at a table playing either cards or dice
(footnote: 2) when Robinson approached her, kissed her on the forehead, and cut her throat.  Several others present at the time of the assault also identified Robinson as the person who cut Turner’s throat.  
Robinson was convicted by a jury and sentenced to 20 years’ imprisonment.

III. Sufficiency of the Evidence 

In his first three points, Robinson attacks the sufficiency of the evidence. In points one and two, Robinson complains that the evidence is legally and factually insufficient to support his conviction.  In point three, Robinson complains that the evidence is insufficient to prove that the knife used was a deadly weapon.  He also complains that the State failed to prove that the knife, admitted as State’s exhibit two, was the knife used to assault Turner.

Legal Sufficiency

In his first point, Robinson argues that the evidence is legally insufficient to support his conviction.  In support of that argument, he points to a number of facts in the record that he contends are sufficient to raise a reasonable doubt as to his guilt.

In conducting a legal sufficiency review, a reviewing court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. 
 Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)
.  Rather, in reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Id
.; 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

Robinson was indicted for aggravated assault with a deadly weapon.
 Thus, the State had to prove that Robinson intentionally, knowingly, or recklessly caused bodily injury to Turner by use of a deadly weapon.  
See
 
Tex. Penal Code Ann.
 §§ 22.01 (a)(1), 22.02 (a)(2) (Vernon Supp. 2004-05). 

At trial, Turner identified Robinson as her assailant
(footnote: 3) and testified that she was seated at a table playing either cards or dice when Robinson approached her, kissed her on the forehead, and cut her throat.  Several other persons present at the time of the assault also testified that Robinson cut Turner’s throat.  Witness T.J. Kersey testified that he was at the kitchen table playing dice with Turner when Robinson approached Turner and cut her throat.  T.J. Kersey’s mother, Cindy Kersey, testified that she was on the computer while Turner and her son were “shooting dice at the table behind [her]” when she heard Turner exclaim, “[O]h my God, he cut my throat.”  She testified that she then turned to see Turner holding her throat and Robinson walking toward the door.  She also testified that she later saw Robinson standing outside the door of the apartment holding a knife dripping blood.  Witness J.W. Collins testified that on the night of the assault he observed Robinson sitting on the couch with a large knife trimming his nails and mumbling under his breath.  He stated that he observed Robinson later go outside with a girl named Naomi and that when Robinson returned from outside he walked over to the table where Turner was playing craps and cut her throat.
(footnote: 4)  Even defense witness Britt Johnson testified, albeit during cross-examination, that Robinson cut Turner’s throat; although he admitted on re-direct that he did not actually see the cutting.

Dr. Charles Bayouth testified that he operated on Turner, that the knife found by police was consistent with Turner’s injuries, and that her injury was serious, possibly life threatening.  Finally, 
former Fort Worth Police Officer Prince Ray identified State’s exhibit two as the knife he recovered from the crime scene, and testified that the knife was a deadly weapon capable of causing serious bodily injury or death.

After viewing all the evidence in a light most favorable to the verdict, we

conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Robinson committed the offense of aggravated assault with a deadly weapon. 
Accordingly, we hold that the evidence was legally sufficient to support Robinson’s conviction.  Robinson’s first point is overruled. 

Factual Sufficiency

In his second point, Robinson contends that the evidence is factually insufficient to support his conviction. In support of his assertion, he generally contends that the evidence does not support the testimony of the witnesses against him.
(footnote: 5)
 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481(Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 
 In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In his challenge to the sufficiency of the evidence, Robinson asserts, among other things, that Turner’s medical records indicate that she gave varying accounts to medical personnel regarding how she was injured; that the witnesses who testified against him, including Turner, were all on drugs on the night of the assault; and that an expert testified that the blood evidence did not support the witnesses’ testimony regarding how Turner’s throat was cut.  Further, he asserts, among other things, that there was a delay in calling for help while drugs were removed from the scene, that Turner initially told police Cindy Kersey was the only witness, and that witness Cindy Kersey initially misled police regarding who was present in the apartment at the time of the assault.  In sum, Robinson challenges the credibility of the witnesses testifying against him and asserts that the “crime scene was staged” to blame him for Turner’s injuries.

In evaluating the factual sufficiency of the evidence, we first turn to Robinson’s assertion that Turner gave varying accounts to medical personnel regarding how she received her injuries.
 Turner’s medical records 
 admitted at trial indicate that she told a doctor at the hospital that she was playing “dice” when she was “stabbed in her neck for a person present in the game,”
(footnote: 6) that she told the hospital’s trauma staff that she was “involved in an altercation in a dice game” at the time she was assaulted, and that she told a social worker that she “was playing dominoes with an acquaintance and an altercation occurred resulting in the acquaintance slashing [her] neck with a knife.”  Robinson asserts that these statements indicate that Turner was identifying someone else, not Robinson, as her assailant.  We disagree. 

Although we agree that the statements attributed to Turner in her medical records, if accurate, vary to some extent and that they may be interpreted to be somewhat inconsistent with her testimony at trial, we note that Turner, when confronted with these statements at trial, denied the statement attributed to her by the social worker and testified that she could not remember making either of the other two statements.  Further, even if the jury believed that Turner made these statements, none of the statements specifically identify Turner’s assailant. Finally, and perhaps most importantly, we note that police took a recorded statement from Turner on the morning following the assault, and in that statement Turner positively identified Robinson as her assailant.

Next, we consider Robinson’s assertion that the blood evidence does not support the testimony of the witnesses regarding how Turner’s throat was cut. In that regard, the defense’s forensic expert, Max Courtney, testified that he had reviewed the crime scene report prepared by Officer Ray as well as the crime scene photographs, and that he had not heard testimony at trial that would reasonably explain the “arc of cast-off blood” on the back door as depicted in State’s exhibit 11, the blood spatter pattern on the back wall or the blood on the chair located against the back wall.  Further, he testified that he had not heard testimony that could reasonably explain the lack of blood found where Turner claimed she was sitting at the time her throat was cut.  However, on cross-examination, Courtney admitted that he had not interviewed any of the witnesses or visited the crime scene.  Further, he admitted that he had not personally examined the furniture from the crime scene, that it was possible that there were blood particles on the furniture that would not be visible in the photographs, and that except for the cast-off blood on the back door, the blood on the back door and on the back door knob (as depicted in State’s exhibit 11) was consistent with Turner’s testimony.  Finally, Courtney testified that the blood on the kitchen floor depicted on State’s exhibit 12 was consistent with the testimony of the State’s witnesses, and that the “droplets of blood right outside the front door” were consistent with Cindy Kersey’s testimony that she observed Robinson standing outside the front door with a knife dripping blood, except that there was not that amount of blood on the knife.
(footnote: 7)
 What weight to give contradictory testimonial evidence is within the sole province of the jury, as it turns on the evaluation of credibility and demeanor. 
Cain
, 958 S.W.2d at 408-409. 
 As the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, a jury may believe or disbelieve all or any part of a witness’s testimony. 
 McKinny v. State
, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Thus, the jury was free to believe all or any part of Turner’s testimony or of the other witnesses.  A court of appeals must show deference to such a jury finding. 
Cain
, 958 S.W.2d at 409. The varying statements contained in Turner’s  medical records, the testimony of Robinson’s forensic expert regarding the blood evidence, or lack thereof, the testimony of Turner and the other witnesses, and the possibility that Robinson was being framed were all factors for the jury to consider in evaluating the evidence. A jury’s decision is not manifestly unjust merely because the jury resolved conflicting views in favor of the State. 
 Id
. at 410. 

A
fter examining all of the evidence neutrally, we hold that the proof of guilt was not so obviously weak as to undermine confidence in the jury’s determination; nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met.  
Accordingly, we hold that the evidence was factually sufficient to support Robinson’s conviction. Robinson’s second point is overruled. 

Deadly Weapon Finding

In his third point, Robinson complains that the evidence was insufficient to establish that the knife used was a deadly weapon.  Further, Robinson complains that the State failed to prove that the knife admitted to evidence as State’s exhibit two was the weapon used to cut Turner.

Although a knife is not a deadly weapon per se, the Texas Court of Criminal Appeals has held than an object such as a knife can be a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury.  
McCain v. State
, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000). 
 Here, police found a knife on the sidewalk about 45 feet from Turner’s apartment and a knife sheaf inside Turner’s apartment. 
The knife, admitted into evidence as State’s exhibit two, measures approximately eleven and three-quarters inches long, is partially serrated and has a pointed tip.  The blade of the knife is approximately one inch wide at its base and six inches long. 
 Turner testified that the knife found by police and admitted as State’s exhibit two was the knife used to cut her throat and that the knife belonged to Robinson. 
 
Further, Dr. Bayouth testified that he operated on Turner, that the knife was consistent with her injuries, and that her injuries were severe, possibly life threatening. 
 
Finally, former Fort Worth Police Officer Prince Ray testified that the knife constituted a deadly weapon.
 
 
Robinson presented no evidence that the knife was not a deadly weapon.

Accordingly, we hold that the evidence is legally and factually sufficient to show that State’s exhibit two was the knife used to assault Turner, and that the knife was a deadly weapon capable of causing death or serious bodily injury.  
Robinson’s third point is overruled.

IV. Trial of Robinson in Shackles

In his fourth point, Robinson contends that the trial court committed reversible error when it ordered him tried in shackles.

When a defendant is viewed by the jury in handcuffs or shackles, his presumption of innocence is seriously infringed.  
Cooks v. State
, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 927 (1993); 
Long v. State
, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991).  Only in rare circumstances is shackling called for, and in such event, the record must detail the grounds for such action. 
 Cooks
, 844 S.W.2d at 722; 
Long
 823 S.W.2d at 282.
  The trial judge must set forth with specificity the reasons supporting his decision to restrain the defendant. 
 Cooks
, 844 S.W.2d at 722; 
Long
, 823 S.W.2d at 282.  On appeal, the role of this court is to determine whether the trial court abused its discretion in authorizing restraint.  
Cooks
, 844 S.W.2d at 722;
 Long
, 823 S.W.2d at 282.  However, even if abuse of discretion exists, reversal may not be called for if such abuse was harmless. 
 Cooks
, 844 S.W.2d at 722.  Further, the court of criminal appeals has held that in the absence of evidence that the jury actually saw the shackles, no reversible error exists. 
 See Cooks
, 844 S.W.2d at 722; 
Long
, 823 S.W.2d at 283.

Here, the record reflects that Robinson’s defense counsel objected to his client being tried in shackles and requested an alternative security device be used to prevent him from being seen by the jury in shackles.  The trial court responded that “special precautions” would be taken to ensure that the jurors could not see Robinson’s shackles.  Further, Robinson does not point us to any evidence in the record that the jury ever saw, heard, or otherwise became aware that he was in shackles.  Accordingly, Robinson has made no showing of harm or prejudice.  Absent evidence that the jury actually became aware that Robinson was in shackles, we conclude that Robinson was not harmed.  Thus, we need not decide whether the circumstances were sufficient to justify the trial court’s action, because even if the trial court did abuse its discretion in allowing the restraint of Robinson, we cannot say that he was harmed.  
See Cooks
, 844 S.W.2d at 722; 
Long
, 823 S.W.2d at 283.  Robinson’s fourth point is overruled.

V. Extraneous Offense Evidence 

In his fifth point, Robinson contends that the trial court abused its discretion when it overruled his objection to testimony by Turner that she had previously seen Robinson with knives, because the State had failed to provide him notice of its intent to introduce such evidence as required by Rule 404(b) of the Texas Rules of Evidence.  Further, Robinson contends that the trial court abused its discretion when it denied his request for a limiting instruction.

To preserve error, the complaint on appeal must comport with the objection made at trial.  
See
 
Thomas v. State
, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986); 
Cate v. State
, 124 S.W.3d 922, 933 (Tex. App.—Amarillo 2004, pet. ref’d); 
Brown v. State
, 6 S.W.3d 571, 582 (Tex. App.—Tyler 1999, pet. ref’d).  Here, Robinson’s objection at trial does not comport with his complaint on appeal.  At trial, Robinson objected to Turner’s testimony, in relevant part, on the ground that it constituted evidence of extraneous matters in violation of Rule 404(b). 
 See 
Tex. R. Evid.
 404(b).  On appeal, Robinson contends that the trial court abused its discretion because the State failed to give him notice of its intent to introduce evidence of his prior possession of knives.  We find nothing in the record to indicate that Robinson alerted the trial court that his objection was based upon the State’s failure to provide him notice.  Accordingly, we hold that Robinson failed to preserve error, if any. 

In addition, we conclude that the trial court did not abuse its discretion when it overruled Robinson’s request for a limiting instruction.  We have found no authority, nor does Robinson point us to any, standing for the proposition that the mere possession a knife, without more, is evidence of other crimes, wrongs, or acts under Rule 404(b).
(footnote: 8) 
 Further, if the challenged evidence does not show that an offense was committed or does not connect the defendant to the offense, then it is not evidence of an extraneous offense.  
Arthur v. State
, 11 S.W.3d 386, 390 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  
See Moreno v. State
, 858 S.W.2d 453, 463 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 966 (1993); 
Lockhart v. State
, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 849 (1993).  Here, the State did not attempt to connect Robinson’s past possession of knives with any extraneous criminal offense.  Nor do we find anything in the record to infer or suggest any such connection.  Accordingly, we hold that the trial court did not abuse its discretion when it denied Robinson’s request for a limiting instruction.  Robinson’s fifth point is overruled.  

Conclusion

Because we overrule Robinson’s five points on appeal we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b
)

DELIVERED:  December 30, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Turner initially testified that she was playing cards at the time of her assault, but stated during cross-examination that she could not remember whether it was cards or dice, but that she was playing one or the other.

3:
Turner testified at trial that she knew Robinson before the assault. In fact, she testified that he had spent the night at her apartment “maybe four or five times.”

4:
On cross-examination, Collins admitted that from where he was sitting his view of Turner was blocked.

5:
We consider Robinson’s factual sufficiency challenge to incorporate the arguments made in his legal sufficiency challenge.

6:
Although we read the hospital’s record to indicate that Turner told the doctor that she was stabbed “for” a person in the dice game, we note that Dr. Charles Bayouth testified at trial that it would be reasonable to interpret the entry to say that Turner was stabbed in the neck either “for” or “by” a person in the game.

7:
Courtney testified that there was not enough blood on the knife to support Cindy Kersey’s testimony that it was dripping blood.  However, he admitted that he had not examined the knife until trial (3 years later) and that it was possible that the knife could have been wiped off before it was found.

8:
There is no evidence that the knives were switchblades, the possession of which is illegal. 
 See
 
Tex. Penal Code Ann.
 § 46.05 (Vernon Supp. 2004-05).