

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00379-CR

_____

CASTELLA LEE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1517886R

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

A jury found Castella Lee guilty of four counts of aggravated robbery with a deadly weapon—a firearm—and one count of unlawful possession of a firearm. Finding the repeat-offender notice in each count true, the jury assessed his punishment at 50 years' confinement and a $2,000 fine for each of the aggravated-robbery convictions and 20 years' confinement and a $2,000 fine for the unlawful-possession-of-a-firearm conviction. Tex. Penal Code Ann. §§ 29.03(a)(2), 46.04(a). After the trial court imposed sentence, Lee appealed and in three points asserts that

(1) for all five convictions, the evidence was insufficient to prove that the gun he displayed was a firearm;

(2) the application paragraphs in the aggravated-robbery jury charges erroneously omitted instructing the jury that it must acquit him of the aggravated robberies if it found that the State did not prove those offenses beyond a reasonable doubt; and

(3) the aggravated-robbery jury charges erroneously failed to include a "not guilty" verdict form for the lesser-included robbery offenses.

We hold that the evidence sufficed to prove the gun was a firearm and that although the charges contained unobjected-to errors, the harm was not egregious. We affirm.

## Background

In August 2016, a gunman robbed a Taco Bell in Arlington, Texas. In a six-count indictment, the State alleged

- in the first five counts—one count for each of the five Taco Bell employees who were present—that Lee committed an aggravated robbery with a deadly weapon, a firearm, and

2

- in the sixth and last count that Lee was a felon unlawfully in possession of a firearm.

At trial, among other witnesses, four of the five Taco Bell employees testified. After the State rested, Lee took the stand and admitted robbing the Taco Bell but maintained that the gun he had brandished was only a pellet gun (and thus not a "firearm") that he later threw down a drain. The detective who investigated the case never recovered the gun.

After both sides closed, the State waived the one aggravated-robbery count involving the Taco Bell employee who had not testified. The jury charge encompassed

- the remaining four counts of aggravated robbery with a deadly weapon, a firearm, with each count including the lesser-included robbery offense; and

- the felon-unlawfully-in-possession-of-a-firearm count.

Lee voiced no objection to the charge.

## Arguments

### I. The evidence sufficed to support the findings that Lee used or exhibited a firearm during the robberies and that Lee, a felon, unlawfully possessed a firearm.

In his first point, Lee argues that the evidence is insufficient to prove that he used or exhibited a firearm as alleged in the aggravated robberies and, similarly, is insufficient to show that he unlawfully possessed a firearm. He points to the fact that multiple witnesses testified that they did not know if the gun they saw was real or only

3

a replica. He also points to his own testimony to establish that the gun was not a real firearm and to the detective's testimony that the police never recovered the gun.

**A. Standard of Review**

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency

4

review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

A deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17). A "gun" is not a deadly weapon per se, but a "firearm" is. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A); *Boyett v. State*, 692 S.W.2d 512, 517 (Tex. Crim. App. 1985); *Johnson v. State*, No. 07-14-00155-CR, 2016 WL 1274928, at *2 (Tex. App.—Amarillo Mar. 31, 2016, pet. ref'd) (mem. op., not designated for publication); *Arthur v. State*, 11 S.W.3d 386, 389 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "Gun" is a much broader term than "firearm" and may include such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns. *Johnson*, 2016 WL 1274928, at *2; *Arthur*, 11 S.W.3d at 389.

## B. Discussion

### 1. The Evidence

Lee admitted that the first time he asserted that the gun was only a look-alike was during his trial testimony. Before that, Lee had denied committing the offense and had said nothing suggesting the gun was a "fake." At trial, Lee asserted that if the police needed to recover the gun, he could tell them where it was or, at least, where he

had tossed it about a year earlier. When the prosecutor asked Lee to describe the gun in the Taco Bell photos, Lee acknowledged that it looked like a revolver.

Wendy Rodriguez, one of the Taco Bell employees, agreed that the robber had a gun and asserted that he pointed it at "each and every one of us, I guess, to scare us." She did not know if the gun was real, but she thought so at the time.

Maria Ceja, a second Taco Bell employee, did not balk when asked if she saw a gun, saying that she saw it when the robber pointed it at them and that she was scared: "I was afraid that he was going to shoot." She admitted not being able to tell if the gun was a firearm or a BB gun, but when the prosecutor asked Ceja what she had thought the robber would do if they did not give him the money, she answered, "That he was going to kill us. That's why I said, no, let him take everything."

A third Taco Bell employee, Guadalupe Velaquez, stated that the robber "came in all dressed in black and with a pistol in his hand," pointed the gun at them, and threatened them, and at the time, they thought it was real. If they did not do as they were told, Velaquez thought that the robber would hit them or shoot them with his gun, hurting or killing them.

Omar Bouffine, the fourth Taco Bell employee, stated that because the gun had no orange tip, he thought it was real. Knowing the difference between a revolver and a semiautomatic, Bouffine asserted that the gun he saw was a revolver.

Detective Allen Constantino, who was assigned to the August 16, 2016 Taco Bell robbery, stated that from reviewing the video, he could tell that the gun was a revolver. But he acknowledged that he never recovered the gun.

Another detective, Justin Coffee, who had been assigned to investigate an August 22, 2016 robbery at a Burger King that Lee also admitted committing at trial, stated, "I don't have the ability to look at a gun on video and to tell anybody whether or not it was real or not." But from watching the Burger King video, Detective Coffee asserted that he could tell that the robber had a "revolver" in his hand.

One of the victims of the Burger King robbery, Sherrie Walton, testified that the robber put the gun to her head. When asked what she thought would happen if she did not comply with the robber's instructions, she responded, "I'm assuming [he brought the gun] to shoot me. You don't bring a gun if you don't plan on using it." She described the gun as "an older gun. Like a revolver as opposed to [a semiautomatic]."

Mark Porter, a forensic-video analyst for the Tarrant County District Attorney's Office, watched the surveillance videos for both the Taco Bell and Burger King robberies and stated that the weapon appeared to be "a dark-colored firearm" with "a protruding hammer . . . on the back of the firearm." He agreed that it appeared to be a revolver "[b]ecause of the cylindrical shape that's located right in front of the hammer right in front of where the hand is gripping the weapon." In

Porter's opinion, which he based on owning several firearms, he saw nothing in the videos that suggested the gun was not a real firearm.

### 2. Disposition

The various witnesses repeatedly referred to a gun, a pistol, or a revolver, and the video shows Lee pointing such an object. Testimony using any of the terms "gun," "pistol," or "revolver" suffices to authorize a jury's deadly-weapon finding. *Rhodes v. State*, No. 02-04-00323-CR, 2005 WL 1593953, at \*2 (Tex. App.—Fort Worth July 7, 2005, no pet.) (mem. op., not designated for publication) (citing *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. [Panel Op.] 1979)).

But Lee maintains that there are limits to a jury's inferences and cites *Cruz v. State* for the proposition that although a jury can reasonably infer from the victim's testimony that the "gun" used while committing the crime was, in fact, a firearm, one important qualification exists—"[a]bsent any specific indication to the contrary at trial." 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In Lee's case, as just such a "specific indication to the contrary," he points to his own testimony and to the State's never having recovered the gun to contradict that testimony. We are not persuaded.

Here, Lee's argument turns on whether his testimony sufficed to create a reasonable doubt. The jury, as the factfinder, determines witnesses' credibility, and for each witness, it can choose to believe all, some, or none of that witness's testimony. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim App. 1991); *Chasco v. State*,

8

568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd). The verdict shows that

the jury disbelieved Lee, which was reasonable given that

- Lee's testimony was self-serving;

- Lee was the person who disposed of the gun in the first place, making it unavailable for trial;

- Lee waited until trial to assert that the gun was really a pellet gun, effectively precluding its timely recovery;

- if the gun were a pellet gun, producing it would have exculpated Lee, not incriminated him, so his discarding the gun circumstantially evidenced a firearm; and

- by that point in time (Lee was the last witness to testify during the guilty/not-guilty phase, and he admitted committing the robberies only after hearing the State's evidence against him), Lee's offer to help recover the gun might have seemed disingenuous and manipulative.

Viewing all the evidence in the light most favorable to the verdict, we hold that

a rational factfinder could have found beyond a reasonable doubt that Lee used or

exhibited a firearm during the robberies and that he was a felon unlawfully in

possession of a firearm.[1] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*,

520 S.W.3d at 622; *Chambers*, 805 S.W.2d at 461; *Rhodes*, 2005 WL 1593953, at *2. We

overrule Lee's first point.

---

[1]The State introduced a prior felony conviction into evidence. Lee later admitted having that conviction.

**II. The jury charge was erroneous, but the harm was not egregious.**

Lee's second and third points challenge alleged charge errors. In his second point, he argues that the application paragraphs for each of the aggravated-robbery charges erroneously omitted the instruction that the jury must acquit if it did not find guilt beyond a reasonable doubt. And in his third point, Lee complains that the aggravated-robbery jury charges did not contain a "not guilty" verdict form for the lesser-included robbery offenses. *See generally* Comm. On Pattern Jury Charges, State Bar of Tex., *Texas Crim. Pattern Jury Charges—General, Evidentiary & Ancillary Instructions*, CPJC 6.3 (2018). In both instances, Lee did not object to the proposed charge.

To better understand Lee's arguments, we first present the jury charges' relevant portions:

> Now, If you find from the evidence beyond a reasonable doubt that on or about the 16th day of August, 2016, in Tarrant County, Texas, the Defendant, Castella Lee, did intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Maria Ceja[2] in fear of imminent bodily injury or death, and the Defendant used or exhibited a deadly weapon, namely a firearm, then you will find the Defendant guilty of the offense of aggravated robbery, as charged in Count One of the indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the Defendant is guilty of the offense of robbery.

---

[2]The application paragraphs and verdict forms for the other three aggravated robberies were the same except for identifying a different count and a different complainant.

If you find from the evidence beyond a reasonable doubt that on or about the 16th day of August, 2016, in Tarrant County, Texas, the Defendant, Castella Lee, did intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Maria Ceja in fear of imminent bodily injury or death, then you will find the Defendant guilty of the offense of robbery.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of robbery and say by your verdict "Not Guilty."

. . . .

VERDICT FORMS (COUNT ONE)

We, the Jury, find the Defendant, Castella Lee, not guilty of the offense of aggravated robbery, as charged in Count One of the indictment.

_____
Presiding Juror

-OR-

We, the jury, find the Defendant, Castella Lee, guilty of the offense of aggravated robbery, as charged in Count One of the indictment.

_____
Presiding Juror

-OR-

We, the Jury, find the Defendant, Castella Lee, guilty of the offense of robbery.

_____
Presiding Juror

11

## A. Standard of review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013) (plurality opinion); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The

purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## B. The Application Paragraph

The court of criminal appeals has already addressed Lee's application-paragraph complaint and has held that although erroneous, this error is not so egregious that it deprives the defendant of a fair and impartial trial. *See Boyett*, 692 S.W.2d at 515–16. The court wrote that the charge "should have more explicitly instructed the jurors that if they did not believe, or if they had reasonable doubt of appellant's guilt of the greater offense, they should acquit appellant and proceed to consider whether appellant was guilty of the lesser included offense." *Id.* at 515. Conceding that the charge was not a model one, the court nevertheless wrote that it "essentially instructed the jurors to acquit, without specifically using the word 'acquit[,'] by stating that if the jurors had a reasonable doubt as to the guilt of appellant to the greater offense, they should next consider the lesser included offense." *Id.* at 516. The court concluded: "This instruction properly informed the jurors to consider appellant's requested instructions on lesser included offenses. . . . The charge read as a whole adequately instructed the jurors about acquitting appellant and about considering the lesser included offenses requested by appellant." *Id.* Relying on *Boyett*, we overrule Lee's second point.

**C. The Absence of a "Not Guilty" Option for the Lesser-Included Offenses**

The State concedes, and we agree, that the charge erroneously omits the "not guilty" option for the lesser-included robbery offenses. *See Jennings v. State*, 302 S.W.3d 306, 309–10 (Tex. Crim. App. 2010).

But we hold that any harm was not egregious—that is, any harm Lee suffered was theoretical, not actual. *See Almanza*, 686 S.W.2d at 174. The record shows:

- Lee admitted committing the robberies; all he disputed was whether he displayed a firearm.

- Consistent with Lee's testimony, defense counsel conceded the robberies but contested whether the gun was a firearm in closing jury argument:

  o "[Y]ou heard him testify. . . . He's being honest. I mean, he was honest, he said he did it. . . . There isn't a firearm here. . . . There is no proof that, in fact, it was a firearm."

  o "There's no evidence here that proves, certainly not beyond a reasonable doubt, that it was, in fact, a firearm."

  o "So with that in mind, if that's the case, then the charge is robbery. . . . That is the correct charge. From everything we've heard, the charge should be robbery."

  o "So, obviously, I can't tell you come back with not guilty on everything. I think that's already been decided. But I would ask you to look at the evidence and really think about this, that the firearm was not proven beyond a reasonable doubt."

In the context of Lee's testimony and his counsel's jury argument, robbery convictions were Lee's best-case scenarios.

Additionally, the application paragraphs instructed the jury to address the robbery issue only if it could not agree on the aggravated robbery; because the jury found Lee guilty of aggravated robbery, it never progressed to the robbery issue and thus never encountered the verdict-form error. Put another way, the jury's verdict on aggravated robbery mooted any error in the robbery verdict forms.

Finally, the application paragraphs informed the jury that "[u]nless [it] so f[ou]nd beyond a reasonable doubt, or if [it] ha[d] a reasonable doubt thereof, [it] will acquit [Lee] of the offense of robbery and say by [its] verdict 'Not Guilty.'" When faced with a similar instruction and charge error, the Amarillo Court of Appeals wrote: "[I]t cannot be said that the jurors were somehow duped into believing that they had to convict [the defendant] for something [because the charge contained no 'not guilty' verdict form for the lesser-included offense]." *Jennings v. State*, No. 07-08-00087-CR, 2010 WL 2244108, at *1 (Tex. App.—Amarillo June 4, 2010, pet. ref'd) (mem. op. on remand, not designated for publication).

Because the harm was not egregious, we overrule Lee's third point. *See Almanza*, 686 S.W.2d at 171; *Jennings*, 2010 WL 2244108, at *2.

## Conclusion

Having overruled Lee's three points, we affirm the trial court's judgments.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 1, 2019