COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-315-CR
 
 
DAVEON ROBINSON                                                              APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 297TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        A 
jury found appellant, Daveon Robinson (“Robinson”), guilty of aggravated 
assault and sentenced him to 20 years’ imprisonment. In five points on appeal, 
Robinson complains that (1 & 2) the evidence is legally and factually 
insufficient to support the jury’s verdict, (3) the evidence is insufficient 
to prove that the knife used is a deadly weapon, (4) the trial court abused its 
discretion when it ordered Robinson tried in shackles, and (5) the trial court 
abused its discretion by overruling Robinson’s objection to extraneous 
evidence.  We will affirm.
II. Background Facts and Procedural History
        On 
the night of October 16, 2000, Vicki Turner (“Turner”) was entertaining 
several other persons in her apartment when Robinson cut her throat.  She 
was taken by ambulance to John Peter Smith Hospital where she underwent 
emergency surgery to stop the bleeding.  Police found a knife near the 
sidewalk about 45 feet from Turner’s apartment and a knife sheaf inside 
Turner’s apartment.  When interviewed by police, Turner identified 
Robinson as her assailant.  Robinson was subsequently indicted by a grand 
jury of aggravated assault with a deadly weapon to which he pleaded not guilty.  
At trial, Turner identified Robinson as her assailant and testified that the 
knife found by police was the knife Robinson used to cut her throat.  She 
stated that she was seated at a table playing either cards or dice[2] when Robinson approached her, kissed her on the forehead, 
and cut her throat. Several others present at the time of the assault also 
identified Robinson as the person who cut Turner’s throat.  Robinson was 
convicted by a jury and sentenced to 20 years’ imprisonment.
III. Sufficiency of the Evidence
        In 
his first three points, Robinson attacks the sufficiency of the evidence. In 
points one and two, Robinson complains that the evidence is legally and 
factually insufficient to support his conviction. In point three, Robinson 
complains that the evidence is insufficient to prove that the knife used was a 
deadly weapon.  He also complains that the State failed to prove that the 
knife, admitted as State’s exhibit two, was the knife used to assault Turner.
Legal Sufficiency
        In 
his first point, Robinson argues that the evidence is legally insufficient to 
support his conviction.  In support of that argument, he points to a number 
of facts in the record that he contends are sufficient to raise a reasonable 
doubt as to his guilt.
        In 
conducting a legal sufficiency review, a reviewing court does not ask itself 
whether it believes that the evidence at the trial established guilt beyond a 
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 
2789 (1979).  Rather, in reviewing the legal sufficiency of the evidence to 
support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have 
found the essential elements of the crime beyond a reasonable doubt.  Id.; 
Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 
319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may 
not sit as a thirteenth juror, re-evaluating the weight and credibility of the 
evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. 
denied, 529 U.S. 1131 (2000).
        Robinson 
was indicted for aggravated assault with a deadly weapon.  Thus, the State 
had to prove that Robinson intentionally, knowingly, or recklessly caused bodily 
injury to Turner by use of a deadly weapon.  See Tex. Penal Code Ann. §§ 22.01 (a)(1), 
22.02 (a)(2) (Vernon Supp. 2004-05).
        At 
trial, Turner identified Robinson as her assailant[3] 
and testified that she was seated at a table playing either cards or dice when 
Robinson approached her, kissed her on the forehead, and cut her throat.  
Several other persons present at the time of the assault also testified that 
Robinson cut Turner’s throat.  Witness T.J. Kersey testified that he was 
at the kitchen table playing dice with Turner when Robinson approached Turner 
and cut her throat.  T.J. Kersey’s mother, Cindy Kersey, testified that 
she was on the computer while Turner and her son were “shooting dice at the 
table behind [her]” when she heard Turner exclaim, “[O]h my God, he cut my 
throat.”  She testified that she then turned to see Turner holding her 
throat and Robinson walking toward the door.  She also testified that she 
later saw Robinson standing outside the door of the apartment holding a knife 
dripping blood.  Witness J.W. Collins testified that on the night of the 
assault he observed Robinson sitting on the couch with a large knife trimming 
his nails and mumbling under his breath.  He stated that he observed 
Robinson later go outside with a girl named Naomi and that when Robinson 
returned from outside he walked over to the table where Turner was playing craps 
and cut her throat.[4]  Even defense witness 
Britt Johnson testified, albeit during cross-examination, that Robinson cut 
Turner’s throat; although he admitted on re-direct that he did not actually 
see the cutting.
        Dr. 
Charles Bayouth testified that he operated on Turner, that the knife found by 
police was consistent with Turner’s injuries, and that her injury was serious, 
possibly life threatening.  Finally, former Fort Worth Police Officer 
Prince Ray identified State’s exhibit two as the knife he recovered from the 
crime scene, and testified that the knife was a deadly weapon capable of causing 
serious bodily injury or death.
        After 
viewing all the evidence in a light most favorable to the verdict, we conclude 
that a rational trier of fact could have found, beyond a reasonable doubt, that 
Robinson committed the offense of aggravated assault with a deadly weapon.  
Accordingly, we hold that the evidence was legally sufficient to support 
Robinson’s conviction.  Robinson’s first point is overruled.
Factual Sufficiency
        In 
his second point, Robinson contends that the evidence is factually insufficient 
to support his conviction. In support of his assertion, he generally contends 
that the evidence does not support the testimony of the witnesses against him.[5]
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party.  See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt.  Id. at 484-85.  “This standard acknowledges that 
evidence of guilt can ‘preponderate’ in favor of conviction but still be 
insufficient to prove the elements of the crime beyond a reasonable doubt.” Id. 
at 485. In other words, evidence supporting a guilty finding can outweigh the 
contrary proof but still be insufficient to prove the elements of an offense 
beyond a reasonable doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence.  
Id. at 484, 486-87. An opinion addressing factual sufficiency must 
include a discussion of the most important and relevant evidence that supports 
the appellant’s complaint on appeal.  Sims v. State, 99 S.W.3d 
600, 603 (Tex. Crim. App. 2003).
        In 
his challenge to the sufficiency of the evidence, Robinson asserts, among other 
things, that Turner’s medical records indicate that she gave varying accounts 
to medical personnel regarding how she was injured; that the witnesses who 
testified against him, including Turner, were all on drugs on the night of the 
assault; and that an expert testified that the blood evidence did not support 
the witnesses’ testimony regarding how Turner’s throat was cut.  
Further, he asserts, among other things, that there was a delay in calling for 
help while drugs were removed from the scene, that Turner initially told police 
Cindy Kersey was the only witness, and that witness Cindy Kersey initially 
misled police regarding who was present in the apartment at the time of the 
assault.  In sum, Robinson challenges the credibility of the witnesses 
testifying against him and asserts that the “crime scene was staged” to 
blame him for Turner’s injuries.
        In 
evaluating the factual sufficiency of the evidence, we first turn to 
Robinson’s assertion that Turner gave varying accounts to medical personnel 
regarding how she received her injuries.  Turner’s medical records 
admitted at trial indicate that she told a doctor at the hospital that she was 
playing “dice” when she was “stabbed in her neck for a person present in 
the game,”[6]  that she told the hospital’s 
trauma staff that she was “involved in an altercation in a dice game” at the 
time she was assaulted, and that she told a social worker that she “was 
playing dominoes with an acquaintance and an altercation occurred resulting in 
the acquaintance slashing [her] neck with a knife.”  Robinson asserts 
that these statements indicate that Turner was identifying someone else, not 
Robinson, as her assailant.  We disagree.
        Although 
we agree that the statements attributed to Turner in her medical records, if 
accurate, vary to some extent and that they may be interpreted to be somewhat 
inconsistent with her testimony at trial, we note that Turner, when confronted 
with these statements at trial, denied the statement attributed to her by the 
social worker and testified that she could not remember making either of the 
other two statements.  Further, even if the jury believed that Turner made 
these statements, none of the statements specifically identify Turner’s 
assailant. Finally, and perhaps most importantly, we note that police took a 
recorded statement from Turner on the morning following the assault, and in that 
statement Turner positively identified Robinson as her assailant.
        Next, 
we consider Robinson’s assertion that the blood evidence does not support the 
testimony of the witnesses regarding how Turner’s throat was cut. In that 
regard, the defense’s forensic expert, Max Courtney, testified that he had 
reviewed the crime scene report prepared by Officer Ray as well as the crime 
scene photographs, and that he had not heard testimony at trial that would 
reasonably explain the “arc of cast-off blood” on the back door as depicted 
in State’s exhibit 11, the blood spatter pattern on the back wall or the blood 
on the chair located against the back wall. Further, he testified that he had 
not heard testimony that could reasonably explain the lack of blood found where 
Turner claimed she was sitting at the time her throat was cut. However, on 
cross-examination, Courtney admitted that he had not interviewed any of the 
witnesses or visited the crime scene.  Further, he admitted that he had not 
personally examined the furniture from the crime scene, that it was possible 
that there were blood particles on the furniture that would not be visible in 
the photographs, and that except for the cast-off blood on the back door, the 
blood on the back door and on the back door knob (as depicted in State’s 
exhibit 11) was consistent with Turner’s testimony.  Finally, Courtney 
testified that the blood on the kitchen floor depicted on State’s exhibit 12 
was consistent with the testimony of the State’s witnesses, and that the 
“droplets of blood right outside the front door” were consistent with Cindy 
Kersey’s testimony that she observed Robinson standing outside the front door 
with a knife dripping blood, except that there was not that amount of blood on 
the knife.[7]
        What 
weight to give contradictory testimonial evidence is within the sole province of 
the jury, as it turns on the evaluation of credibility and demeanor.  Cain, 
958 S.W.2d at 408-409.  As the exclusive judges of the facts, the 
credibility of the witnesses, and the weight to be given their testimony, a jury 
may believe or disbelieve all or any part of a witness’s testimony.  McKinny 
v. State, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no 
pet.).  Thus, the jury was free to believe all or any part of Turner’s 
testimony or of the other witnesses.  A court of appeals must show 
deference to such a jury finding. Cain, 958 S.W.2d at 409.  The 
varying statements contained in Turner’s medical records, the testimony of 
Robinson’s forensic expert regarding the blood evidence, or lack thereof, the 
testimony of Turner and the other witnesses, and the possibility that Robinson 
was being framed were all factors for the jury to consider in evaluating the 
evidence.  A jury’s decision is not manifestly unjust merely because the 
jury resolved conflicting views in favor of the State.  Id. at 410.
        After 
examining all of the evidence neutrally, we hold that the proof of guilt was not 
so obviously weak as to undermine confidence in the jury’s determination; nor 
was the contrary evidence so strong that the beyond-a-reasonable-doubt standard 
could not have been met.  Accordingly, we hold that the evidence was 
factually sufficient to support Robinson’s conviction.  Robinson’s 
second point is overruled.
Deadly Weapon Finding
        In 
his third point, Robinson complains that the evidence was insufficient to 
establish that the knife used was a deadly weapon.  Further, Robinson 
complains that the State failed to prove that the knife admitted to evidence as 
State’s exhibit two was the weapon used to cut Turner.
        Although 
a knife is not a deadly weapon per se, the Texas Court of Criminal Appeals has 
held than an object such as a knife can be a deadly weapon if the actor intends 
a use of the object in which it would be capable of causing death or serious 
bodily injury.  McCain v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. 
App. 2000). Here, police found a knife on the sidewalk about 45 feet from 
Turner’s apartment and a knife sheaf inside Turner’s apartment.  The 
knife, admitted into evidence as State’s exhibit two, measures approximately 
eleven and three-quarters inches long, is partially serrated and has a pointed 
tip.  The blade of the knife is approximately one inch wide at its base and 
six inches long. Turner testified that the knife found by police and admitted as 
State’s exhibit two was the knife used to cut her throat and that the knife 
belonged to Robinson.  Further, Dr. Bayouth testified that he operated on 
Turner, that the knife was consistent with her injuries, and that her injuries 
were severe, possibly life threatening.  Finally, former Fort Worth Police 
Officer Prince Ray testified that the knife constituted a deadly weapon. 
Robinson presented no evidence that the knife was not a deadly weapon.
        Accordingly, 
we hold that the evidence is legally and factually sufficient to show that 
State’s exhibit two was the knife used to assault Turner, and that the knife 
was a deadly weapon capable of causing death or serious bodily injury.  
Robinson’s third point is overruled.
IV. Trial of Robinson in Shackles
        In 
his fourth point, Robinson contends that the trial court committed reversible 
error when it ordered him tried in shackles.
        When 
a defendant is viewed by the jury in handcuffs or shackles, his presumption of 
innocence is seriously infringed.  Cooks v. State, 844 S.W.2d 697, 
722 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 927 (1993); Long v. 
State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Only in rare 
circumstances is shackling called for, and in such event, the record must detail 
the grounds for such action. Cooks, 844 S.W.2d at 722; Long 823 
S.W.2d at 282.  The trial judge must set forth with specificity the reasons 
supporting his decision to restrain the defendant.  Cooks, 844 
S.W.2d at 722; Long, 823 S.W.2d at 282.  On appeal, the role of this 
court is to determine whether the trial court abused its discretion in 
authorizing restraint.  Cooks, 844 S.W.2d at 722; Long, 823 
S.W.2d at 282.  However, even if abuse of discretion exists, reversal may 
not be called for if such abuse was harmless.  Cooks, 844 S.W.2d at 
722.  Further, the court of criminal appeals has held that in the absence 
of evidence that the jury actually saw the shackles, no reversible error exists.  
See Cooks, 844 S.W.2d at 722; Long, 823 S.W.2d at 283.
        Here, 
the record reflects that Robinson’s defense counsel objected to his client 
being tried in shackles and requested an alternative security device be used to 
prevent him from being seen by the jury in shackles.  The trial court 
responded that “special precautions” would be taken to ensure that the 
jurors could not see Robinson’s shackles.  Further, Robinson does not 
point us to any evidence in the record that the jury ever saw, heard, or 
otherwise became aware that he was in shackles.  Accordingly, Robinson has 
made no showing of harm or prejudice.  Absent evidence that the jury 
actually became aware that Robinson was in shackles, we conclude that Robinson 
was not harmed.  Thus, we need not decide whether the circumstances were 
sufficient to justify the trial court’s action, because even if the trial 
court did abuse its discretion in allowing the restraint of Robinson, we cannot 
say that he was harmed.  See Cooks, 844 S.W.2d at 722; Long, 
823 S.W.2d at 283. Robinson’s fourth point is overruled.
V. Extraneous Offense Evidence
        In 
his fifth point, Robinson contends that the trial court abused its discretion 
when it overruled his objection to testimony by Turner that she had previously 
seen Robinson with knives, because the State had failed to provide him notice of 
its intent to introduce such evidence as required by Rule 404(b) of the Texas 
Rules of Evidence.  Further, Robinson contends that the trial court abused 
its discretion when it denied his request for a limiting instruction.
        To 
preserve error, the complaint on appeal must comport with the objection made at 
trial.  See Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. 
App. 1986); Cate v. State, 124 S.W.3d 922, 933 (Tex. App.—Amarillo 
2004, pet. ref’d); Brown v. State, 6 S.W.3d 571, 582 (Tex. App.—Tyler 
1999, pet. ref’d).  Here, Robinson’s objection at trial does not 
comport with his complaint on appeal. At trial, Robinson objected to Turner’s 
testimony, in relevant part, on the ground that it constituted evidence of 
extraneous matters in violation of Rule 404(b).  See Tex. R. Evid. 404(b).  On appeal, 
Robinson contends that the trial court abused its discretion because the State 
failed to give him notice of its intent to introduce evidence of his prior 
possession of knives.  We find nothing in the record to indicate that 
Robinson alerted the trial court that his objection was based upon the State’s 
failure to provide him notice.  Accordingly, we hold that Robinson failed 
to preserve error, if any.
        In 
addition, we conclude that the trial court did not abuse its discretion when it 
overruled Robinson’s request for a limiting instruction.  We have found 
no authority, nor does Robinson point us to any, standing for the proposition 
that the mere possession a knife, without more, is evidence of other crimes, 
wrongs, or acts under Rule 404(b).[8]   
Further, if the challenged evidence does not show that an offense was committed 
or does not connect the defendant to the offense, then it is not evidence of an 
extraneous offense.  Arthur v. State, 11 S.W.3d 386, 390 (Tex. 
App.—Houston [14th Dist.] 2000, pet. ref’d).  See Moreno v. State, 
858 S.W.2d 453, 463 (Tex. Crim. App.), cert. denied, 510 U.S. 966 (1993); 
Lockhart v. State, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992), cert. 
denied, 510 U.S. 849 (1993).  Here, the State did not attempt to 
connect Robinson’s past possession of knives with any extraneous criminal 
offense.  Nor do we find anything in the record to infer or suggest any 
such connection.  Accordingly, we hold that the trial court did not abuse 
its discretion when it denied Robinson’s request for a limiting instruction.  
Robinson’s fifth point is overruled.
Conclusion
        Because 
we overrule Robinson’s five points on appeal we affirm the trial court’s 
judgment.


                                                          BOB 
MCCOY
                                                          JUSTICE
 
 
PANEL B:   LIVINGSTON, 
GARDNER, and MCCOY, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: December 30, 2004

NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  
Turner initially testified that she was playing cards at the time of her 
assault, but stated during cross-examination that she could not remember whether 
it was cards or dice, but that she was playing one or the other.
3.  
Turner testified at trial that she knew Robinson before the assault.  In 
fact, she testified that he had spent the night at her apartment “maybe four 
or five times.”
4.  On 
cross-examination, Collins admitted that from where he was sitting his view of 
Turner was blocked.
5.  We 
consider Robinson’s factual sufficiency challenge to incorporate the arguments 
made in his legal sufficiency challenge.
6.  
Although we read the hospital’s record to indicate that Turner told the doctor 
that she was stabbed “for” a person in the dice game, we note that Dr. 
Charles Bayouth testified at trial that it would be reasonable to interpret the 
entry to say that Turner was stabbed in the neck either “for” or “by” a 
person in the game.
7.  
Courtney testified that there was not enough blood on the knife to support Cindy 
Kersey’s testimony that it was dripping blood.  However, he admitted that 
he had not examined the knife until trial (3 years later) and that it was 
possible that the knife could have been wiped off before it was found.
8.  There 
is no evidence that the knives were switchblades, the possession of which is 
illegal.  See Tex. Penal Code 
Ann. § 46.05 (Vernon Supp. 2004-05).